Barbara K. BAUER, Plaintiff-Appellant,

v.

**SOUTHWEST DENVER MENTAL HEALTH CENTER, INC., Paul R. Polak, M.D., and Timothy Weissinger, M.D., Defendants-Appellees.**

No. 82CA0906.

Colorado Court of Appeals,
Div. III.

Jan. 31, 1985.

Rehearing Denied Feb. 28, 1985.

Certiorari Denied May 28, 1985.

Myrick & Newton, P.C., William E. Myrick, Steven E. Napper, Denver, for plaintiff-appellant.

Pryor, Carney & Johnson, P.C., Peter W. Pryor, Edward D. Bronfin, Englewood, for defendants-appellees.

METZGER, Judge.

In this malpractice and wrongful death action, plaintiff, Barbara K. Bauer, appeals the trial court's entry of summary judgment in favor of defendants, Southwest Denver Mental Health Center, Inc. (Southwest), Paul R. Polak, M.D. (Polak), and Timothy Weissinger, M.D. (Weissinger). We affirm in part and reverse in part.

Plaintiff brings this action as the surviving spouse of Jon Bauer, who was killed on September 15, 1979, when David P. DelaCruz (DelaCruz) boarded the R.T.D. bus Bauer was driving and stabbed him to death with a knife stolen moments before in a sporting goods store robbery. DelaCruz was a patient of Southwest prior to and at the time of the incident. Defendant Polak is the executive director of Southwest, and defendant Weissinger is the Medical Director of Southwest and a psychiatrist who had been treating DelaCruz.

DelaCruz was arrested in December 1978 as a result of a family dispute during which he assaulted his father and his brother. He was examined and diagnosed at Denver General Hospital as being in an acute exacerbation of a schizophrenic illness, grossly paranoid, openly hostile, violent, and dangerous to himself and others. He was certified for treatment at Southwest on January 2, 1979. Involuntary treatment continued until April 4, 1979, when voluntary treatment on an outpatient basis began. According to the allegations of the complaint, Mellaril was prescribed to alleviate the symptoms of paranoid schizophrenia; however, intake of this medication was reduced in July 1979, and then unilaterally discontinued by DelaCruz in August 1979, contrary to his treatment plan but with defendants' knowledge. During this time, DelaCruz was to attend monthly therapy sessions. He missed his July 1979 appoint-

ment, but appeared briefly at Southwest in August, which was his last contact with Southwest prior to Jon Bauer's death.

After being charged with first degree murder DelaCruz was adjudicated not guilty by reason of insanity and committed to the Colorado Department of Institutions.

Plaintiff brought this action, alleging that defendants had failed to obtain a complete psychiatric history of DelaCruz, and had failed to supervise him properly, namely, by allowing him to discontinue his medication, to miss therapy appointments, and by not independently investigating his employment and home situations. She asserted that defendants' actions in regard to DelaCruz so deviated from the proper standard of psychiatric care in the community as to cause the death of Jon Bauer. As well, plaintiff sought damages based on outrageous conduct, and also requested punitive damages.

Defendants denied all material allegations of the complaint and moved for summary judgment on all issues of liability. The trial court granted defendants' motion, and this appeal followed.

## I.

Plaintiff first contends that the trial court erred in holding that she had a duty to present affidavits on the issue of causation when defendants raised the issue in their motion for summary judgment but failed to provide any affidavits in support of that allegation. Citing *Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978), she argues that this requirement of providing affidavits improperly shifted the burden of proof to her. We agree.

■ Summary judgment is appropriate only in the clearest of cases, where no doubt exists concerning any material fact. *Roderick v. City of Colorado Springs*, 193 Colo. 104, 563 P.2d 3 (1977). In considering a motion for summary judgment, the trial court must accept the non-moving party's pleadings as true unless the depositions and admissions on file, together with the affidavits, clearly disclose that there is no

genuine issue as to any material fact, with any doubts being resolved in favor of the non-moving party. *Abrahamsen v. Mountain States Telephone & Telegraph Co.*, 177 Colo. 422, 494 P.2d 1287 (1972). *Norton v. Leadville Corp.*, 43 Colo.App. 527, 610 P.2d 1348 (1979).

■ The moving party bears the burden of establishing that no genuine issue of material fact exists. If the moving party meets this burden, the opposing party *may*, but is not required to, submit opposing affidavits. *Ginter v. Palmer & Co.*, *supra*. Counsel cannot raise a genuine issue simply by means of argument; the contentions must be supported in accordance with the requirements of C.R.C.P. 56. *Sullivan v. Davis*, 172 Colo. 490, 474 P.2d 218 (1970).

Relying on *Miller v. Van Newkirk*, 628 P.2d 143 (Colo.App.1980), defendants assert that plaintiff's failure to supply affidavits on the issue of causation renders the trial court's ruling correct. Defendants' reliance is misplaced. *Miller v. Van Newkirk* is distinguishable.

In *Miller*, defendant's motion for summary judgment was accompanied by affidavits from expert physician witnesses, attesting to defendant's lack of negligence. In response, plaintiff provided no affidavits from any experts on the issue of negligence, but instead, relied on his pleadings and on affidavits of experts which did not show that any testimony on negligence would be forthcoming at trial. Thus, the trial court's summary judgment was affirmed.

■ Here, neither side has presented any affidavits on the causation issue. Since there was no showing by defendants of specific facts probative of a right to judgment, defendants failed to meet their burden under C.R.C.P. 56. Thus, it was unnecessary for plaintiff to provide affidavits on the causation issue. *See Durnford v. City of Thornton*, 29 Colo.App. 349, 483 P.2d 977 (1971).

■ Accordingly, the trial court was obliged to treat the allegations of plain-

tiff's complaint as true. Since the complaint alleged that the defendants' deviation from the requisite standard of psychiatric care in the community caused the damages complained of, a genuine issue of material fact remained to be decided. Consequently, we conclude that the trial court erred in granting summary judgment as to this issue.

## II.

Plaintiff next asserts that the trial court erred in dismissing her claim that defendants' failure to utilize the procedures for emergency short-term commitment set out in § 27–10–105(1)(a), C.R.S., constituted negligence *per se*. We disagree.

■ In order for an actionable claim of negligence *per se* to arise, the statute in question must prohibit or require a particular act. *Dunbar v. Olivieri*, 97 Colo. 381, 50 P.2d 64 (1935). As we stated in *Sego v. Mains*, 41 Colo.App. 1, 578 P.2d 1069 (1978), interpreting a statute worded in similarly permissive terms: "It is an essential element of negligence *per se* that the statute proscribe or prescribe specific conduct on the part of the tortfeasor, ... that is, detail whether 'particular acts shall or shall not be done' by the party charged with observing the statute."

■ Section 27–10–105(1)(a), C.R.S., provides in pertinent part:

"When any person appears to be mentally ill and, as a result of such mental illness, appears to be an imminent danger to others or to himself or appears to be gravely disabled, ... a professional person ... upon probable cause and with such assistance as may be required, *may* take the person into custody, or cause him to be taken into custody, and place him in a facility designated or approved by the executive director for a seventy-two-hour treatment and evaluation." (emphasis added)

This permissive language necessarily implies the use of judgment and discretion on the part of the professional seeking to invoke its provisions. While the statute cre-

ates a power, it does not impose a mandate. Consequently, a violation of this statute, while possibly relevant to a claim for relief in malpractice, cannot, by definition, create a claim based on negligence *per se*. Therefore, we conclude that the trial court correctly granted defendants' motion for summary judgment on this claim.

## III.

Plaintiff next contends that the trial court erred in granting summary judgment on the issues of outrageous conduct and punitive damages. We disagree.

## A.

■ Liability for outrageous conduct exists where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). The trial court must determine, as a threshold matter of law, whether the defendant's alleged conduct was sufficiently heinous to create a submissible claim. *Blackwell v. Del Bosco*, 35 Colo.App. 399, 536 P.2d 838 (1975), *aff'd* 191 Colo. 344, 558 P.2d 563 (1976). If, after viewing the evidence in the light most favorable to plaintiff, the court determines that no reasonable person could conclude that the defendant's conduct was outrageous, summary judgment is appropriate. *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900 (Colo.1982).

■ Here, the trial court determined that the allegations in plaintiff's complaint were insufficient to constitute a claim of outrageous conduct. Our review of the record leads us to conclude that this ruling was correct.

## B.

■ Similarly, we agree with the trial court's determination that there were no allegations of conduct by defendants which would constitute "fraud, malice, or insult, or a wanton and reckless disregard of the [plaintiff's] rights and feelings," as man-

dated by § 13–21–102, C.R.S. Thus, granting of summary judgment as to plaintiff's claim for punitive damages was correct. *Mince v. Butters,* 200 Colo. 501, 616 P.2d 127 (1980).

## IV.

Relying on § 27–1–205(1)(b), C.R.S. (1978 Repl.Vol. 11), which requires that "overall responsibility for the administration of a community mental health clinic be vested in a director who is a physician or a member of one of the mental health professions," plaintiff contends that the trial court erred in refusing to apply the doctrine of *respondeat superior* to Dr. Polak individually and in granting summary judgment as to him personally. We disagree.

In his answer, Dr. Polak admitted that he was responsible for the administrative supervision of those caring for and treating David DelaCruz. He further admitted that his conduct would be attributable to Southwest because he was acting as an employee of Southwest and was acting within the scope and course of his employment at the time DelaCruz was being treated. However, in the affidavit accompanying his motion for summary judgment, Dr. Polak stated that he, individually, had no contact with DelaCruz and had no personal involvement in the care and treatment of DelaCruz.

 In order to sustain a claim based upon *respondeat superior,* a plaintiff must show that the defendant individually had actual control over or had the right to control the actions of others. *Dumont v. Teets,* 128 Colo. 395, 262 P.2d 734 (1953). This liability derives historically from the power and ability of the employer to control the acts of the employee. *See Rodriquez v. City & County of Denver,* 702 P.2d 1349 (Colo.App. No. 83CA1262, December 20, 1984).

In asserting that § 27–1–205(1)(b) imposes individual liability upon the director of a mental health center, plaintiff argues, in essence, that the General Assembly, in requiring mental health expertise at the administrative level, implicitly transformed an executive director-employee of a mental health center into an employer, thus triggering imposition of the doctrine of *respondeat superior* as to that executive director individually. We decline to reach such a result.

 In construing a statute, the legislative intent is to be ascertained and given effect, and the statute should be given the construction which will render it effective in accomplishing the purpose for which it was intended. *Cross v. Colorado State Board of Dental Examiners,* 37 Colo.App. 504, 552 P.2d 38 (1976). The language of a statute must be accorded its familiar meaning, and a forced or strained interpretation should not be followed. *In Re Estate of Colacci,* 37 Colo.App. 369, 549 P.2d 1096 (1976).

Section 27–1–203, C.R.S. (1982 Repl.Vol. 11) authorizes the department of institutions to purchase community mental health services "[i]n order to encourage the development of preventive, treatment, and rehabilitative services through new community mental health programs, the improvement and expansion of existing community mental health services, and the integration of community with state mental health services." To that end, the General Assembly enacted § 27–1–205(1)(b) which requires the director of the department of institutions to require that the overall responsibility for the administration of a community mental health clinic be vested in a director who is a physician or a member of one of the mental health professions. In § 27–1–205(1)(c), C.R.S. (1978 Repl.Vol. 11), the General Assembly specified that the treatment programs of a clinic be under the overall direction of a psychiatrist who is a physician licensed to practice medicine in the State of Colorado.

 The legislative scheme, therefore, envisioned that the responsibility for a patient's treatment program be vested in a psychiatrist. In this case, that psychiatrist was defendant Dr. Weissinger. The legislative scheme further envisioned that the

overall administrative responsibility for the clinic's operations be vested in a person who had expertise in addition to administrative skills. Nowhere, however, does the statute require, either explicitly or implicitly, that the executive director of a mental health center be liable, individually, for the acts or omissions of the Center's staff under the doctrine of *respondeat superior*. We conclude that the statutory intent here was to provide high-quality care to patients of community mental health centers. We find nothing in the General Assembly's language that would alter the traditional notions of employer-employee liability.

■ Defendants have admitted that Southwest, as an employer, can be held vicariously liable under the doctrine of *respondeat superior* for the acts of its employees. *See McDonald v. Lakewood Country Club*, 170 Colo. 355, 461 P.2d 437 (1969). Dr. Polak had no right to control the activities of Southwest's employees apart from his position as Executive Director and agent of Southwest. The fact that directors of mental health centers in Colorado are required to possess expertise beyond that required of administrators does not, and cannot, be a springboard to imposition of individual liability absent some personal involvement. Here, the evidence is uncontradicted that Dr. Polak had no personal involvement in DelaCruz' care and treatment. Consequently, his liability, if any, would result solely from his actions as administrator of Southwest.

Thus, we conclude that the trial court's order granting summary judgment as to Dr. Polak was correct.

The summary judgment in favor of defendants on the negligence per se, outrageous conduct, and punitive damages claims is affirmed, as well as the summary judgment in favor of Dr. Polak. In other respects the judgment is reversed, and the cause is remanded for further proceedings.

KELLY and TURSI, JJ., concur.