Lillian SPENCER, Plaintiff–Appellant,

v.

UNITED MORTGAGE COMPANY,
Defendant–Appellee.

No. 92CA0707.

Colorado Court of Appeals,
Div. II.

July 15, 1993.

James T. Reed, Denver, for plaintiff-appellant.

Fowler, Schimberg & Cowman, P.C., Timothy P. Schimberg, Denver, for defendant-appellee.

Opinion by Chief Judge STERNBERG.

Plaintiff, Lillian Spencer, appeals from the summary judgment entered in favor of defendant, United Mortgage Company (UMC). We affirm.

In 1983, plaintiff purchased a townhouse and executed a promissory note and a deed of trust, both of which were subsequently assigned to UMC. Plaintiff stopped making mortgage payments in September 1987, and UMC initiated foreclosure proceedings in the spring of 1988.

In early June 1989, plaintiff contacted UMC and indicated that she would soon be moving; she did not, however, inform UMC as to when this would take place. On June 15, the townhouse was sold at a public sale, and a certificate of purchase was issued to UMC on June 21. Two days earlier, on June 19, plaintiff had left Colorado to pursue graduate studies in Florida. At that time, plaintiff left her key with a friend who had agreed to finish removing her personal belongings from the townhouse and place them in storage.

At about this time, UMC sent plaintiff a notice requesting that she vacate the premises by the weekend of July 2–3. UMC also hired Midwest Financial, Inc. (Midwest) to secure and "winterize" the townhouse. Midwest, in turn, contracted the job out to Rental Renovators, Inc. (Rental).

On June 28, plaintiff's friend entered the townhouse and removed a number of the belongings that had been left behind. Apparently, some time between June 28 and 30, Rental winterized the townhouse and changed the locks. On June 30, plaintiff's friend returned to the townhouse and realized that the locks had been changed. She obtained a new key from UMC, and when she went back to the townhouse during the following week, she discovered that plaintiff's personal belongings were missing.

Plaintiff's friend notified UMC of the missing property, and, a short time later, she was contacted by a representative of Rental. The representative then conducted an investigation and subsequently informed plaintiff that one of Rental's employees had returned to the townhouse some time after it had been winterized and stolen her property.

In April 1990, plaintiff brought this action asserting claims against UMC for trespass and outrageous conduct. In addition, plaintiff claimed that UMC had breached the deed of trust by allowing Rental to enter the townhouse. Plaintiff also asserted that UMC was liable under a theory of negligence because it failed to discover that Rental was not insured and that its employees had a history of stealing from work-sites.

UMC introduced evidence establishing: (1) it was not involved in selecting Rental as a subcontractor; (2) Midwest was insured at the time of the theft; and (3) Midwest had made appropriate inquiries before selecting Rental to work on the townhouse. UMC then moved for summary judgment. The trial court granted the motion without comment, and it subsequently entered an order awarding UMC its costs.

I.

On appeal, plaintiff contends that summary judgment was improperly granted be-

cause there were material issues of fact. We conclude that the record establishes UMC's entitlement to summary judgment on each of plaintiff's claims.

## A. *Trespass and Breach of the Deed of Trust*

The sole remedy sought by plaintiff on these claims was compensation for the items that were allegedly stolen by Rental's employee. Therefore, in order to hold UMC vicariously liable for this loss, plaintiff would be required to show that Rental was an employee or agent of UMC and that the Rental employee was acting within the scope of his employment at the time he committed the intentional tort. *See generally Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282 (Colo.1992); *Bauer v. Southwest Denver Mental Health Center, Inc.*, 701 P.2d 114 (Colo. App.1985).

Here, the only evidence concerning the latter issue was in plaintiff's affidavit, submitted in opposition to the motion for summary judgment, wherein she stated that a representative of Rental told her "one of his employees had taken the new key to my townhouse from the company where keys are kept and returned to my townhouse and stolen my property." This statement establishes that the theft occurred some time after Rental had completed its work at the townhouse. Accordingly, even if it were assumed that Rental was an employee or agent of UMC, there is nothing in the record to suggest that the Rental employee was acting within the scope of his employment at the time of the theft. *See Connes v. Molalla Transport System, Inc.*, 831 P.2d 1316 (Colo.1992) (approving the view that when an employee commits an intentional tort against a customer, such conduct is almost invariably outside scope of employment).

## B. *Negligent Selection of Contractor*

We likewise conclude that UMC was entitled to summary judgment on the claim for negligent selection of a contractor.

The tort of negligent hiring was recognized by our supreme court in *Connes v. Molalla Transport System, Inc., supra.* There, the court held that an employer has a duty of reasonable care in making a hiring decision, and that duty may be breached when a person is hired "under circumstances antecedently giving the employer reason to believe that the person, by reason of some attribute of character or prior conduct, would create an undue risk of harm to others in carrying out his or her employment responsibilities." *Connes v. Molalla Transport System, Inc., supra*, 831 P.2d at 1321.

Here, plaintiff's claim was premised, in part, on the allegation that Midwest was aware that Rental's employees had a history of stealing from the workplace. However, plaintiff's affidavit in opposition to the summary judgment motion reveals that the sole basis for this assertion was a statement by the president of Midwest, made some time after October 1988, to the effect that "thefts from homes that Rental Renovators had been hired to secure and/or 'winterize' were a regular occurrence." This statement does not support an inference that Midwest knew of this conduct at any point prior to the theft of plaintiff's property.

Therefore, even if Midwest and Rental were considered to be employees or agents of UMC, and not independent contractors, the evidence in the record is insufficient to satisfy the test set forth in *Connes v. Molalla Transport System, Inc., supra.*

## C. *Outrageous Conduct*

We also conclude that the claim for outrageous conduct was properly resolved by the trial court's summary judgment ruling.

To establish a claim for outrageous conduct, a plaintiff must show that the defendant intentionally or recklessly caused severe emotional distress by extreme and outrageous conduct. *Destefano v. Grabrian*, 763 P.2d 275 (Colo.1988).

In order to be characterized as outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo.1988).

■ The determination whether reasonable persons could differ on the outrageousness issue involves a question of law. *Ellis v. Buckley,* 790 P.2d 875 (Colo.App. 1989).

Here, plaintiff's claim for outrageous conduct was based on the assertion that UMC was responsible for unlawful entry of the townhouse and the changing of the locks and that UMC had not required either Midwest or Rental to be insured or bonded. As an initial matter, we note that plaintiff failed to controvert evidence submitted by UMC establishing that Midwest had a contractor's insurance policy in effect at the time it was hired. As to the remaining assertions made by plaintiff, we conclude that, under the circumstances presented, they fail to establish a sufficient basis for a claim of outrageous conduct on the part of UMC.

## II.

### A. *Authority to Award Costs*

■ Relying on § 13–16–113, C.R.S. (1987 Repl.Vol. 6A), plaintiff asserts that the trial court was without authority to award UMC costs because the action had been resolved on a motion for summary judgment. We disagree.

Section 13–16–113(2), C.R.S. (1987 Repl. Vol. 6A) provides as follows:

In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed prior to trial under rule 12(b) of the Colorado rules of civil procedure, the defendant shall have judgment for his costs. This subsection (2) shall not apply if a motion under rule 12(b)(5) of the Colorado rules of civil procedure is treated as a motion for summary judgment and disposed of as provided in rule 56 of the Colorado rules of civil procedure.

By its terms, this subsection applies only when dismissal has been entered under C.R.C.P. 12(b). In our view, the specific limitation in the second sentence of the subsection, relating to C.R.C.P. 12(b)(5) motions that are treated as summary judgment motions, cannot be reasonably interpreted as a general prohibition extending to all motions for summary judgment brought under C.R.C.P. 56. Accordingly, UMC's entitlement to an award of costs was properly considered under C.R.C.P. 54(d) ("Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.").

### B. *Deposition Fee*

■ Plaintiff also contends that UMC's bill of costs did not provide enough information to allow the trial court to determine whether the claimed deposition fee was incurred for the perpetuation of testimony. We do not agree.

■ Subject to the limitations set forth in § 13–16–122, C.R.S. (1987 Repl.Vol. 6A), an award of costs lies within the sound discretion of the trial court. *Rossmiller v. Romero,* 625 P.2d 1029 (Colo.1981).

■ Although the expenses of taking a deposition are generally not allowed as items of costs, § 13–16–122(1)(g), C.R.S. (1987 Repl.Vol. 6A) permits the award of the "costs of taking depositions for the perpetuation of testimony."

Here, portions of a deposition transcript were used in support of UMC's motion for summary judgment. Since the deposition transcript was used in lieu of testimony at trial to resolve the disputed claims, we perceive no abuse of the trial court's discretion in its inclusion of the costs of the deposition in UMC's bill of costs. *See Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.,* 690 P.2d 207 (Colo.1984).

### C. *Other Objections*

Plaintiff also raises a number of other objections to the expenses listed in UMC's

bill of costs. However, these objections are raised for the first time on appeal, and therefore, they are not subject to review. *See Christensen v. Hoover*, 643 P.2d 525 (Colo.1982).

The judgment is affirmed.

TURSI and HUME, JJ., concur.