No. 14,762.

PATTŔIDGE *v.* YOUMANS.
(109 P. [2d] 646)

Decided January 13, 1941.

Messrs. Irwin, O'Connell & Zarlengo, for plaintiff in error.

Mr. Albert J. Gould, Mr. Vernon V. Ketring, for defendant in error.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

Defendant in error Youmans, who was plaintiff below, had judgment for $2,068.07 based on verdict of jury in an action for fraud in which it was alleged that plaintiff in error Pattridge, who was defendant below, sold Youmans a lot which he did not own, which fact was not discovered by Youmans until he had built a house thereon, and which house was then claimed and occupied by the true owner of the lot. Request was made that we dispose of the matter on application for supersedeas, in which reversal is sought.

Plaintiff in error's assignments may be summed up in three propositions: 1. Violation of the statute of frauds. 2. Action of plaintiff in error was simply an honest mistake. 3. Instructions were improper.

1. Youmans, for a number of years, had been a contractor in Jefferson county. Pattridge had been county treasurer and his wife had acquired several lots from a relative who had bought them at tax sale, one of which

was tract sixteen (16), block one (1) Westmoor Acres, Jefferson county. Smedley, a real estate agent, and for the purposes of this action Youman's agent, interviewed the Pattridges with the result that on March 7, 1938, the following agreement was entered into between Youmans and Mrs. Pattridge.

"This agreement made and entered into this 7th day of March, 1938, by and between Nellie I. Pattridge, hereinafter known as the party of the second part, Witnesseth:

"Party of the first part agrees to sell to party of the second part Tract Sixteen (16), Block one (1), Westmoor Acres, Jefferson County, Colorado, for the sum of Four Hundred Fifty Dollars ($450) and to furnish merchantable title and abstract any time within six months of this date.

"It is also understood and agreed that second party is to construct, at his own expense, a modern residence on this tract and expects to sell when complete or procure a loan.

"Second party will complete residence and may call for a deed at any time, which deed is to be given by first party upon payment of Four Hundred Fifty Dollars ($450) to second party or to whomever he instructs first party to issue deed.

"Party of the first part will make a loan of up to Three Hundred Dollars ($300) to second party upon his note with the understanding and agreement that this money is to be repaid with eight per cent (8) interest on or before the time first party delivers deed as requested by second party. The time of advance of this loan shall be optional with party of the first part as it is to be used for additional labor in the construction of said house."

Plaintiff in error's contention regarding this agreement is that it was only good for six months, and since nothing was paid under it, it could not be extended by parol. We do not think this position is tenable. It will

be observed that the word "option" is not used in the agreement at all. Not that the use of that word is absolutely necessary to make it an option to purchase within a given time, but it is to be noted that the six months limitation goes only to the time when a duty devolves on the grantor. Nowhere in this entire record does it appear that time was of the essence, and plaintiff in error, who was representing his wife, knew that Youmans could not pay for the lot until he sold the house, and the last paragraph of the agreement would indicate that he would not have to do so until a loan of $300 had been repaid.

2. Did Pattridge's conduct amount to fraud? In this connection the trial court permitted an amendment to the complaint including the allegation: "And known to the defendant to be false." The record shows, according to the evidence of Smedley and Youmans, that Pattridge did make definite and positive statements to the effect that the lot on which the house was built was tract 16, block 1, i.e., the lot covered by the agreement, and that Pattridge took Smedley to the lot and pointed out its location to him. That being true, the knowledge of the falsity is legally supplied for the purpose of an action of this character.

Counsel for plaintiff in error concede there are cases where a vendor has been held liable for innocently pointing out the wrong property to the vendee, but they say those cases are grounded on an actual sale and where a consideration has passed to the vendor. We think that consideration sufficiently appears here. Plaintiff in error was an officer of a banking corporation that was making F.H.A. loans, and he supposed the bank would make this loan. It had cost him about $150 to quiet the title to the lot and he had sold it for a contract price of $450, so it would seem that the case would well be within the holding of the authorities suggested.

The rule seems to be settled in this jurisdiction that, "It is not necessary, in order to constitute a fraud,

that the party who makes a false representation should know it to be false. He who makes a representation as of his own knowledge, not knowing whether it be true or false, and it is in fact untrue, is guilty of fraud as much as if he knew it to be untrue. In such a case he acts to his *own knowledge* falsely, and the law imputes a fraudulent intent." *Stimson v. Helps,* 9 Colo. 33, 36, 10 Pac. 290. The rule is restated and a number of our cases cited in *Otis & Co. v. Grimes,* 97 Colo. 219, 48 P. (2d) 788.

■ We think Youmans had a right to rely on the statement made by Pattridge. Pattridge had been county treasurer, and through relatives had been acquiring lots for the purpose of resale. He was officially connected with a bank making F.H.A. loans, which presumably would indicate some responsibility in such matters. It is true that the description and ownership of the lot in question was a matter of public record and that Youmans could have availed himself of this information, which he failed to do; but, under the circumstances, we do not feel he can be legally charged with dereliction. "However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other." *Sellar v. Clelland,* 2 Colo. 532, 545, quoting from *Reynell v. Sprye,* 1 D., M. & G. 660. The case of *Bosick v. Young-blood,* 95 Colo. 532, 37 P. (2d) 1095, may be distinguished from the one at bar in that the complaining party in the Bosick case was advised by vendor to make his own investigation, which he did to some extent, and which prompted us to say, page 536, "This substantially weakens her testimony and allegation of full reliance on defendant's representations."

■■ 3. The principal point made in the objections to instructions given by the court concerns a statement in instruction No. 1, "that said Mrs. Shinn has appropriated said improvements to her own use, without the payment of any compensation to the plaintiff, as she had

a right to do under the law, because the improvements had been erected without her knowledge or consent * * *."

We doubt the propriety of the use of this language— **although it is in** accord with the rule as stated in 31 C.J. 313—for the reason that Mrs. Shinn was not a party to the action and her ultimate rights should not be determined in this suit; however, as between the parties hereto, the statement, under the circumstances, does not constitute reversible error. The language used, if considered at all, would affect only the amount of recovery and not the right, and, since the sum awarded is not challenged, no prejudice resulted to the defendant.

There is no question but that the testimony concerning what was said and done by the various parties was in direct conflict. The question of the representations was properly submitted to the jury and we are not disposed to interfere with its verdict.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD, MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE OTTO BOCK concur.