No. 22816.

LeRoy A. Duke and Frances K. Duke *v.* Orville C. Pickett and Gentlebreeze Mobilehome Court, Inc.

(451 P.2d 288)

Decided February 17, 1969.     Rehearing denied March 24, 1969.

TINSLEY, ALPERSTEIN, FRANTZ AND PLAUT, MANSUR TINSLEY, for plaintiffs in error.

C. HAMILTON EVANS, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

IN an action to rescind a sales transaction consummated through a trade of assets between the litigating parties, the trial court held that the plaintiffs — they are plaintiffs in error here — "did not sustain their burden of proof in the necessary elements in a fraud false representation action." Our resolution of this writ of error hinges on whether the lower court misapprehended the legal effect of the uncontroverted evidence and thus failed to apply the law to the facts. We hold that the court erred.

Plaintiffs — the Dukes — transferred a mobilehome court they owned to the defendants — the Picketts — in exchange for a promissory note secured by a chattel mortgage on furniture and appliances in, and a second deed of trust on, an apartment building in east Denver. Each of the Dukes testified substantially the same. They stated that at a meeting between the parties, when the agreement to make the exchange was made, the Picketts represented that: (a) the chattel mortgage on the appliances and furniture was a first lien; (b) the makers of the promissory note — Ellsworth and Vera Alsop — were substantial people who had other businesses and properties and that they were so well-fixed financially

that they could pay the note even if the apartment house became vacant; (c) that the makers could make payments from other income and money that they already had. Mrs. Pickett was quoted as saying that the note was so good that she wouldn't think of discounting it even one penny and would be willing absolutely to guarantee it 100%. The Dukes made no investigation of their own and closed the transaction the day following the initial meeting of and the discussion by the parties.

Two months following the exchange — only two payments were made to the Dukes by the Alsops on the promissory note — the Alsops defaulted, and the Dukes further learned that at the same time the holders of the first deed of trust were commencing foreclosure on the apartment house. The Dukes tried to forestall the foreclosure by paying the sum of $2340 to the holders of the superior lien. Nevertheless, the foreclosure followed. At about the same time the Dukes also discovered that the holders of the first deed of trust on the building also had a first and prior lien on all of the refrigerators in the various apartments.

In what we hold to be apt time under the circumstances, the Dukes sent a letter to the Picketts electing to rescind. At a meeting of the parties, the Picketts agreed to re-exchange the properties on the condition that the Dukes make all delinquent payments to the holders of the first mortgage and chattel mortgage on the apartment house and the fixtures. The Dukes refused to accept the conditions imposed, and the law suit followed.

At the trial the Picketts did not dispute the testimony that they had represented "the note to be 100 percent" nor did they deny that they had in fact described the Alsops as being substantially well off. Mrs. Pickett further admitted that she had no basis for her belief in the financial stability of the Alsops except her observation of them as they drove expensive cars and on the further belief that a photographic business bearing their

name was prospering. Mrs. Pickett stated that she "just assumed" the Alsops were financially reliable and had never actually made any investigation to determine their worth or financial stability. The Picketts asserted that their representations were innocently made and that they believed them to be true.

■ It was apparently on the Picketts' protestations of their own belief in their statements that the court predicated its finding that the evidence was insufficient to prove the necessary elements of fraudulent representation. The trial court misapplied the law.

■ The rule applicable to the undisputed conduct of the Picketts in this case was well stated in *Stimson v. Helps*, 9 Colo. 33, 10 P. 290:

" * * * He who makes a representation as to his own knowledge, not knowing whether it be true or false, and it is in fact untrue, is guilty of fraud as much as if he knew it to be untrue. In such a case he acts to his *own knowledge* falsely, and the law imputes a fraudulent intent."

That rule was cited with approval in *Pattridge v. Youmans*, 107 Colo. 122, 109 P.2d 646.

Thus with the establishing that the Picketts' professed knowledge of the financial stability of the Alsops, which they in fact did not have, the reliance thereon by the Dukes, plus the timely attempt to rescind, all the elements for obtaining the relief as prayed for were present. The court erred in the finding to the contrary.

■ Two other findings of the trial court should be discussed briefly. One was that the Dukes did not promptly exercise their rights to rescind after the fraud came to their knowledge. In making this finding the court injected into the case a defense which was not pleaded and which was not tried by the parties. R.C.P. Colo. 8(c) and 12(h) provide that laches and waiver must be affirmatively set forth in the answer and that the party waives all defenses and objections which he does not present in his answer.

The court additionally held that the Dukes should have foreclosed on their chattel mortgage when the apartment house foreclosure was imminent. Our answer to this is that if they had done so they would have acted in affirmation of the transaction and would have lost the right to rescind.

The judgment is reversed and the cause remanded to the trial court to enter judgment for rescission and to enter such other orders as will effectuate return of their property to the plaintiffs.

MR. JUSTICE HODGES, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.