Charles and Patricia **FORSYTH**,
Plaintiffs-Appellees,

v.

**ASSOCIATED GROCERS OF COLORADO, INC., and A.G. Investment Company, Defendants-Appellants.**

No. 82CA1331.

Colorado Court of Appeals,
Div. III.

Jan. 2, 1986.

Rehearings Denied Feb. 13, 1986.

Certiorari Denied Sept. 15, 1986.

*See Chiappe v. State Personnel Board,* 622 P.2d 527 (Colo.1981).

Cox, Wedgle & Padmore, P.C., Jonathan C.S. Cox, Richard J. Wedgle, Gerald Padmore, Denver, for plaintiffs-appellees.

Kelly, Stansfield & O'Donnell, Richard W. Bryans, Marla S. Petrini, Hughes & Dorsey, Carl Seeliger, Michael W. Lillie, Denver, for defendants-appellants.

VAN CISE, Judge.

Defendants, Associated Grocers of Colorado, Inc., and A.G. Investment Company (its affiliate) (collectively, AG), appeal from a $300,000 judgment in favor of plaintiffs, Charles and Patricia Forsyth, on their claim of deceit based on fraud. We affirm the judgment as to liability and reverse as to the amount of damages.

Associated Grocers of Colorado, Inc., is a cooperative food wholesaler made up of and owned by its member independent grocery retailers. In 1975, it advertised in a trade publication, seeking persons interested in becoming independent grocers in this area. Charles Forsyth, who had had 20 years experience in the chain grocery business in Texas, responded to the advertisement.

AG advised the Forsyths of a store in Arvada being sold by Friendly Markets, Inc. (Friendly), and provided them with a projection of future sales and earnings based on information furnished by Friendly that the store's average weekly sales volume was $35,000. AG also put the Forsyths in contact with United Bank of Denver (UBD) and furnished it with the same financial information.

A contract was signed by Friendly and by Charles Forsyth (for himself or his nominee) for assignment of the existing lease and for sale and purchase of the inventory of food and non-food items and the trade fixtures and equipment in the Arvada store. The fixtures and equipment were priced at $25,000 and the inventory was priced on the basis of cost for some items and discount from shelf price for the rest (later determined to be $86,000). The contract expressly provided that it "shall in no event be construed as an agreement to purchase the business of seller, its good will, or any assets of seller except said inventory and personal property."

The Forsyths formed a subchapter S corporation, Charlie's Super Foods, Inc. (Charlie's), with themselves as the only stockholders. Using loans from UBD ($100,000) and from a subsidiary of Freindly ($20,000), with the notes signed by the Forsyths as officers of Charlie's, co-signed by them as individuals, and secured by the assets being purchased, Charlie's bought the inventory and personal property for $111,000 and assumed the lease. An additional $30,000 was put into Charlie's for working capital.

Neither AG nor the Forsyths had done anything to verify the accuracy or completeness of the figures supplied by Friendly. Not until after the purchase and sale had been completed was it discovered that the reported $35,000 average weekly sales volume pertained to a different Friendly store and that the Arvada store's weekly sales had averaged between $18,000 and $24,000.

Charlie's operated the store for about nine months. Losing money, Charles Forsyth, as president of Charlie's, turned over the inventory and equipment to UBD. It sold these items, applied the sale proceeds to the note, and then sued Charlie's and the Forsyths for the balance due on the note. They in turn sued AG (and others not parties to this appeal), seeking, *inter alia*, damages for deceit based on misrepresentations as to the previous volume of weekly sales at the store.

The case was tried to a jury and resulted in a verdict and judgment on the deceit claim in favor of the Forsyths and against AG for $101,891. Charlie's claims were dismissed on directed verdict, and that judgment has not been appealed.

The court set aside the deceit damage award and ordered a new trial on that issue alone. At the second trial on damages only, the jury fixed the amount of the Forsyths' damages on the deceit claim at $300,000, and judgment was entered accordingly.

I.

AG first contends that there was insufficient evidence at the first trial for the jury to find that the Forsyths had established the elements of deceit by misrepresentation. We do not agree.

■ In order for plaintiffs to recover from AG, they had to prove that: (1) AG made a false representation of a past or present fact; (2) the fact was material; (3) AG made the representation knowing it to be false or being aware that it did not know whether it was true or false; (4) AG made the representation with the intent that the Forsyths act in reliance on the representation; (5) the Forsyths relied on the representation; (6) the Forsyths' reliance was justified; and (7) this reliance caused damage to the Forsyths. *CJI–Civ.2d* 19:1 (1980). *See also Trimble v. City & County of Denver,* 697 P.2d 716 (Colo.1985); *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937). The jury was specifically instructed to this effect and also was given a special verdict which it answered in the affirmative as to each of the seven elements.

■ Viewed in the light most favorable to the prevailing parties, as required on review, *Phillips v. City of Golden,* 91 Colo. 331, 14 P.2d 1013 (1932); *Chabot v. Williams Chevrolet Co.,* 30 Colo.App. 277, 491 P.2d 612 (1971), the evidence and reasonable inferences drawn therefrom support the jury's findings. The $35,000 prior sales figure and the projections based thereon were false. There was evidence that AG knew the Forsyths wanted to buy a profitable business, so the earning record was material. *See Zimmerman v. Loose,* 162 Colo. 80, 425 P.2d 803 (1967). Similarly, there was testimony that AG's representative who dealt with the Forsyths knew enough about the store to doubt the accuracy of the figures but made no effort to verify them. Instead, the figures were used, without regard to their truth or falsity, to induce the Forsyths to buy the property and, in the process, to become a new member of AG. *See Pattridge v. Youmans,* 107 Colo. 122, 109 P.2d 646 (1941).

There was evidence that the Forsyths were from out-of-state, visited the Arvada store on only two brief occasions, believed the store could have that much in sales, relied on the figures furnished, and would not have purchased had they known the true facts. There was no showing that the Forsyths knew or should have known that the information was false or that their reliance was unreasonable. *Cf. Greathouse v. Jones,* 167 Colo. 406, 447 P.2d 985 (1968). And, the fact of damage was clearly established.

The jury's findings and conclusion, being supported by competent evidence, are binding on review. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981).

## II.

On AG's motion, the trial court directed a verdict of dismissal of Charlie's deceit claim against AG at the close of plaintiffs' case in the first trial, for the reasons that no representations were made to Charlie's and there was no showing that AG intended Charlie's to rely. The propriety of that dismissal is not before us on this appeal, and we express no opinion thereon.

■ Now, AG contends that the Forsyths' claim against it should be dismissed because Charlie's, and not the Forsyths, made the purchase. We do not accept AG's argument.

Here, AG's misrepresentations were made to the Forsyths. In reliance thereon, Charles Forsyth gave up a good job with a grocery chain in Texas and contracted to buy the store here. Both the Forsyths created Charlie's, invested in or loaned to Charlie's over $20,000 from their own funds, co-signed its $100,000 note to UBD and its $20,000 note to a subsidiary of Friendly, and incurred other losses and expenses. Their claim is for the damages which they sustained individually as a result of AG's fraudulent inducement to the Forsyths to enter into the contract for purchase of the property. *See Trimble v. City & County of Denver, supra.* It is not derivative of any claim by Charlie's for losses by it.

## III.

■ Contrary to AG's contention, there was no credible evidence to establish that the Forsyths rescinded their contract with

Friendly. Turning over the business to UBD was merely a recognition of their liability on the note and UBD's security interest in the assets.

### IV.

Any errors committed by the trial court in the first trial concerning admission of evidence or instructions pertaining to damages were rendered moot when the court set aside the jury's award and ordered a new trial on the damages issue.

### V.

■ AG next contends that at the second trial the court erred in allowing the Forsyths' expert to testify to actual value of the business at time of purchase based partly on prior sales data contained in a spiral notebook found in the store safe at the time the Forsyths took over and ruled inadmissible for lack of foundation. Even if this were error and not within the scope of CRE 703, it was harmless. The unrelated evidence was that the actual sales figures were below the break-even point, making the business worth zero, and it was not disputed that the sales figures furnished by AG were incorrect and substantially higher than the actual figures.

### VI.

■ AG argues that the trial court erred in the second trial in admitting evidence of anticipated profits and in making any reference in the jury instructions to the purchase of the business because only fixtures, equipment, and inventory were sold, and not the going business. On the facts of this case, that argument is without merit. The lease was assigned, the new owners took over the same store, merchandise, and equipment, and the business continued without interruption except for a change of name and a new manager in place of the old. Evidence concerning what the net profits would have been had the gross sales been as represented was admissible as a factor in determining the value of the business in fact and as represented. *See*

*Shirley v. Merrit,* 147 Colo. 301, 364 P.2d 192 (1961).

However, we agree with AG that the jury instructions given opened the door to an improper double recovery. Instruction 1 provided in pertinent part:

"The Plaintiffs, Charles and Patricia Forsyth, claim to have incurred damages by virtue of a misrepresentation of Defendants, Associated Grocers of Colorado, Inc., and A.G. Investment Company, causing losses of the amount of monies they spent following the close of their store in September of 1976, *for the amount of their lost investment, profits, and the benefit of their bargain.*
"The Defendants claim that the Forsyths are not entitled to damages for the period claimed.
"There has been a prior determination that Defendants are liable for the Plaintiffs' damages, if any.
"In view of this determination, the only matter remaining for you to determine is the amount of damages suffered by the Plaintiffs, if any." (Emphasis supplied)
In instruction 9 the jury was told:
"The liability of A.G. to Charles and Patricia Forsyth has already been established by the Court. You shall award to the Forsyths as their actual damages, insofar as proven by the evidence:
"1. The difference between the market value of the business on the date the Plaintiffs purchased it and what its value would have been on that date had the false representations made by A.G. to the Forsyths been true;
"2. Any other damages arising out of the purchase of the business which the Forsyths suffered as the proximate result of the natural consequence of the false representations."
*See CJI–Civ.2d* 19:17 (1980). *See also Trimble v. City & County of Denver, supra* (as to paragraph 2, the consequential damages clause).

■ We find no error in the language in instruction 9. However, because instruction 1 referred to the Forsyths' claim for lost profits, and Mr. Forsyth and his expert

witness had been allowed at trial to testify at length concerning anticipated profits based on the represented gross sales, the jury could easily have been misled into including lost profits as an element of consequential damages in addition to such profits being included as a factor in determining the value of the business as represented in applying the benefit of the bargain general damages rule as stated in paragraph 1 of instruction 9. Such a result would lead to an improper double recovery. We therefore reverse the judgment and remand the cause for a new trial on the issue of the amount of damages.

## VII.

■ We agree with AG that it is entitled under § 13–50.5–105(1)(a), C.R.S. (1984 Cum.Supp.) to setoff against the Forsyths' deceit judgment the amounts paid or credited by former defendants UBD and Friendly for releases of the deceit claims against them. The claimed deceit is substantially the same as that on which the judgment against AG is based.

From the record it appears that UBD settled the deceit claim (the "agency claim") against it by reducing the amount of its deficiency judgment against Charlie's and the Forsyths and that Friendly settled the claim against it by having its subsidiary, Schoenberg Farms, Inc., cancel the balance due on the Forsyths' $20,000 note to it. The exact amount of the consideration paid by each should be determined by the trial court after the jury has rendered its verdict following the new trial and the judgment should be reduced accordingly.

■ AG's $13,534 judgment against Charlie's and Charles Forsyth for the balance due on the goods sold and delivered while the store was operated by Charlie's was not appealed. On remand, the trial court should also apply this as a setoff in arriving at the net judgment in favor of the Forsyths. *See York Plumbing & Heating Co. v. Groussman Investment Co.*, 166 Colo. 382, 443 P.2d 986 (1968).

## VIII.

The other contentions of error raised by AG are without merit.

The judgment in favor of the Forsyths and against AG is affirmed as to liability and reversed as to the amount of damages. The cause is remanded for a new trial on the issue of the amount of damages, and for further proceedings consistent with this opinion.

SMITH and BABCOCK, JJ., concur.