**STONE'S FARM SUPPLY, INC.,**
Petitioner/Cross–Respondent,

v.

**S.G. DEACON, Hildron, Inc., Bond Metz Farms, Inc., Kenneth Metz, Robert Metz, and Ronald Peterson, Respondents/Cross–Petitioners,**

and

**American Plant Food Corporation, Respondent.**

No. 89SC574.

Supreme Court of Colorado,
En Banc.

Feb. 11, 1991.

Rehearing Denied March 11, 1991.

Retherford, Mullen, Rector & Johnson, Michael R. Waters, Colorado Springs, for petitioner/cross-respondent.

Lucero, Kadinger & Lester, Carlos F. Lucero, Helen Sigmond, Alamosa, for respondents/cross-petitioners.

Sherman & Howard, Joseph J. Bronesky, Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *Deacon v. American Plant Food Corp.*, 782 P.2d 861 (Colo.App.1989). The court of appeals affirmed the trial court judgment against Stone's Farm Supply, Inc. (Stone), but reversed the judgment against American Plant Food Corporation (American) predicated on lack of jurisdiction under section 13–21–402, 6A C.R.S. (1987). The court of appeals concluded that American was not strictly liable for damages for the sale of a contaminated fertilizer component because American was not the manufacturer of the component and the plaintiffs had not shown that jurisdiction could not be obtained over the manufacturer of the component. We also agreed to determine whether the court of appeals erred in reversing the trial court's judgment against American for damages on the theory of negligent manufacturing. We now reverse and remand to the court of appeals with directions to reinstate the judgment entered by the trial court against American.

The pleadings in this multiple party action consist of a number of complaints by farmers,[1] answers by the defendants, and a

---

1. In one instance, a farmer refused to pay for fertilizer and asserted his claim against Stone

myriad of motions. All of the farmers' claims for damages were consolidated for trial. The complaints made by the different farmers were not identical, but in general contained alternative claims for negligence, breach of express warranty, implied warranty of merchantability and implied warranty of fitness for a particular purpose, together with separate claims for false representation, negligent manufacturing, strict liability, and *res ipsa loquitur*. American's answer demonstrates the complexity of the issues. The answer of American includes general denials of nearly all of the allegations in the complaint with affirmative defenses of the statute of limitations, waiver and estoppel, contributory negligence, damages chargeable to unidentified parties not before the court, misuse of the product by the plaintiffs, and failure to state a claim on which relief can be granted. It is significant, however, that American did not assert as an affirmative defense in its answer, or in any other pleading, that it was the distributor and not the manufacturer of the contaminated component in the fertilizer and sought the protection afforded by section 13–21–402, 6A C.R.S. (1987), for the first time on appeal.[2] The claim of lack of jurisdiction under the statute was raised by American for the first time on appeal.

Following an extended trial to the court, extensive findings of fact and conclusions of law were entered, and the defendants, Stone and American, were found liable for the damages incurred by the plaintiff farmers on the strict liability and negligence claims. The trial court entered judgment in favor of all other defendants. Both

Stone and American appealed to the court of appeals, which affirmed the judgment against Stone but reversed the judgment against American.[3]

## I

The plaintiffs are farmers that grow potatoes on irrigated land in Rio Grande County, Colorado. Stone is in the business of providing farm supplies and services to farmers in the area and the greater part of Stone's business centers on the distribution and sale of custom fertilizer. In the fall of each year, Stone obtained soil samples from the fields of its regular customers for analysis and for the recommendation of a customized fertilizer for the following year's crop. Stone prepared a "blend sheet" for each farmer, which provided the percentage of nitrogen (N), phosphorus (P), and potassium (K) (N–P–K) that is required for the crop the farmer intends to grow. The components for the fertilizer are purchased from various manufacturers and are mixed by Stone to create the recommended fertilizer for a particular crop on specified land.

Stone obtained ammonium sulfate from American to supply 21% of the nitrogen required.[4] International Minerals and Chemical Company supplied Stone with sulphate of potash to provide 50% of the recommended amount of potassium. Phosphorus was obtained from monoammonium phosphate, which provided 52% phosphorus and 11% nitrogen, purchased from J.R. Simplot, Inc. Stone mixed the components

---

and the other parties in a counterclaim, with ancillary pleadings.

2. The trial court stated:
 Neither APF [American] nor plaintiffs [farmers] ever raised the distinction drawn in CRS 13–21–401 between "sellers" and "manufacturers" until I raised the issue at closing argument. In fact, counsel for APF referred to APF as a manufacturer throughout the trial and in his closing argument. While the record does not necessarily show that 13–21–402(2) applies to this case, it is clear that the parties tried the case on the basis that it does and that jurisdiction under this statute is proper.

3. The court of appeals initially affirmed the judgment against both Stone and American. On petition for rehearing, the court withdrew its original opinion and issued a second opinion affirming the trial court's judgment against Stone but reversing the strict liability judgment against American. Thereafter, the court of appeals amended the second opinion to reverse the judgment entered against American and that opinion is before us for review.

4. American was the distributor and exclusive agent for the sale of the ammonium sulfate manufactured by Badische.

and provided a customized fertilizer mix to each of the plaintiff farmers.

The fertilizer was applied in a preplant band six to eight inches below the ground. Potato seedlings were then planted immediately above the band to permit the roots to draw the nutrients from the fertilizer. A second application of the fertilizer, known as top dress, was made over the plants shortly after the potatoes commenced growing. Not long after the top dress was applied, the farmers discovered that their potato crops were developing in an abnormal manner. The leaves were crinkled, cupped, and distorted, vines displayed excessive growth, and the tubers (potatoes) were misshaped and malformed. The farmers advised Stone of the condition of their potato crop and a number of agronomists and other experts were called in to determine the cause of the crop damage. The experts all concluded that the farmers' potato crops had suffered chemical damage.

The fertilizer supplied by Stone contained four substances that have no place in a potato field: 2,4–Dichlorophenoxyacetic acid (2,4–D), Banvel, Dinoben, and Caprolactum, all were present in the fertilizer and are phenoxy-type herbicides generally referred to in the industry as post-emergent herbicidal weed killers. All four of the herbicides are extremely harmful to broad-leaved plants such as potatoes.

The herbicide that the trial court found, based upon competent evidence, to be the cause of the damage to the potato crops was 2,4–D contained in American's ammonium sulfate utilized in part of Stone's customized fertilizer.[5] A five-week trial to the court ended with judgment for the farmers against American and Stone for $665,-761.83 with interest in the amount of $287,-843.43. Liability against Stone was predicated upon claims for negligence per se and breach of implied warranty. Judgment against American was based upon claims of strict liability and negligent manufacturing.

## II

The court of appeals relied on section 13–21–402, 6A C.R.S. (1987), to reverse the trial court's finding that American was strictly liable for the damage caused to the farmers' potato crops. On appeal, American for the first time raised the statutory defense in section 13–21–402, which provides:

(1) No product liability action based on the doctrine of strict liability in tort shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user, or consumer unless said seller is also the manufacturer of said product or the manufacturer of the part thereof claimed to be defective. Nothing in this part 4 shall be construed to limit any other action from being brought against any seller of a product.

(2) If jurisdiction cannot be obtained over a particular manufacturer of a product or a part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom jurisdiction can be obtained shall be deemed, for the purposes of this section, the manufacturer of the product.

The court of appeals, relying on section 13–21–402, determined that American was merely a distributor and not a manufacturer of ammonium sulfate. Therefore, the court of appeals held that the protection afforded by section 13–21–402 was available to American and the trial court did not have jurisdiction to hold American strictly liable absent a showing that the farmers could not obtain personal jurisdiction over Badische, which manufactured the ammonium sulfate.

██ We must first determine whether the issue is that of personal jurisdiction over the parties or jurisdiction of the subject matter. *People In Interest of Clin-*

---

5. The soil analysis revealed the presence of Banvel and Dinoben herbicides the trial court found were present in the fertilizer but could not have caused the extensive damage suffered by the potato crops. The trial court found International Minerals and Chemical Company and J.R. Simplot, Inc. were not liable to the plaintiff farmers.

*ton,* 762 P.2d 1381, 1386 (Colo.1988); *In re Marriage of Stroud,* 631 P.2d 168, 170 (Colo.1981). The defense of lack of personal jurisdiction is waived if it is not raised in the defendant's pleadings. *Clinic Masters, Inc. v. District Court,* 192 Colo. 120, 123, 556 P.2d 473, 475 (1976); *Board of County Comm'rs v. District Court,* 172 Colo. 311, 313, 472 P.2d 128, 129 (1970). However, the absence of subject matter jurisdiction may be raised at any stage of the proceedings. *Paine, Webber, Jackson & Curtis v. Adams,* 718 P.2d 508, 513 (Colo.1986); *Peaker v. Southeastern Colo. Water Conservancy Dist.,* 174 Colo. 210, 213, 483 P.2d 232, 233 (1971). Both Stone and the farmers contend that section 13–21–402 creates a limitation on the court's personal jurisdiction over distributors, and that the defense was waived by American's failure to raise the issue in its answer or other pleadings. American contends that section 13–21–402 creates a limitation on the trial court's subject matter jurisdiction over strict liability claims against distributors and that the issue may properly be raised for the first time on appeal.

■ Personal jurisdiction is the power to subject a particular defendant to the decisions of the court. A court may exercise personal jurisdiction if fair and adequate notice is provided to the defendant, and if the defendant has sufficient minimum contacts with the state seeking jurisdiction.[6] *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also,* F. James, Jr. & G. Hazard, Jr., *Civil Procedure* § 2.15 (3d ed. 1985). Noncompliance with statutory provisions only involve personal jurisdiction if those statutes pertain to "notice, service of

process, or the statutory residence requirements concerning the persons over whom a court may acquire jurisdiction." *Clinton,* 762 P.2d at 1386.

■ The trial court had personal jurisdiction over American. American contested the trial court's jurisdiction under the Colorado long arm statute, and the trial court, after a full hearing, found that American had adequate notice and sufficient contacts with Colorado to establish personal jurisdiction. Section 13–21–402 serves as a limitation on strict liability claims brought against distributors. That restriction, however, is not based on issues of notice, service of process, or statutory residence requirements and therefore does not affect the trial court's personal jurisdiction over a distributor such as American.

■ Subject matter jurisdiction relates to the nature of the claim and the relief sought. The determination of whether a court has subject matter jurisdiction is based on "the court's authority to deal with the class of cases in which it renders judgment." *Stroud,* 631 P.2d at 170; *see also Clinton,* 762 P.2d at 1387.[7] In Colorado, the district court is a court of general jurisdiction, Colo. Const. art. VI, § 9, and that court has subject matter jurisdiction over claims for strict liability.[8]

■ Section 13–21–402 does not restrict the court's power to determine strict liability claims, but merely articulates the circumstances under which certain parties may be held strictly liable. The qualified immunity granted to sellers and distributors under section 13–21–402 is therefore an affirmative statutory defense that must

6. A Colorado court has personal jurisdiction over a natural person if there has been personal service on the individual physically present in the state. *O'Brien v. Eubanks,* 701 P.2d 614 (Colo.App.1984). If the court lacks personal jurisdiction over a defendant, the defendant may consent to jurisdiction by a voluntary appearance, i.e., by contesting the case without challenging personal jurisdiction. If a defendant is physically present in the forum state and is properly served with process, personal jurisdiction exists in the state court. *Ruggieri v. General Well Serv., Inc.,* 535 F.Supp. 525 (D.Colo.1982).

7. The test of whether the court has subject matter jurisdiction over a particular controversy depends upon the competency of the court to determine controversies of the general class that are presented for its consideration. *Commonwealth Dept. of Public Welfare v. Court of Common Pleas,* 506 Pa. 410, 485 A.2d 755 (1984).

8. Colo. Const. art. VI, § 9 provides: "The district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases, except as otherwise provided herein...."

be raised in the defendant's responsive pleading or answer. C.R.C.P. 12(b); C.R.C.P. 8(c); *Duke v. Pickett,* 168 Colo. 215, 218, 451 P.2d 288, 290 (1969) (defendant waives all defenses not presented in his answer); *see also Crocker v. Colorado Dep't of Rev.,* 652 P.2d 1067, 1070 (Colo. 1982) (failure to plead an affirmative defense precludes appellate review of that issue); *Board of County Comm'rs v. District Court,* 172 Colo. at 313, 472 P.2d at 129–30. Because American did not raise the statutory defense provided in section 13–21–402 in an appropriate responsive pleading, American waived its right to invoke that defense on appeal.[9]

### III

The court of appeals concluded that the uncontroverted evidence established that American was not the manufacturer of the contaminated ammonium sulfate, and that it "was error for the trial court to find American liable for negligent manufacturing which was the plaintiffs' only negligence claim against American." *Deacon v. American Plant Food Corp.,* 782 P.2d at 863. Stone and the farmers assert that the court of appeals failed to address the negligence claim that the trial court merged with negligent manufacturing. The farmers concede that, although they improperly stated general negligence as a *res ipsa loquitur* claim, all parties and the trial judge regarded the issue as a claim for general negligence.

 *Res ipsa loquitur* is a rule of evidence, and as such gives rise to a rebuttable presumption of the defendant's negligence but does not create a substantive claim for relief. *Graf v. Tracy,* 194 Colo. 1, 568 P.2d 467 (1977); *Scott v. Greeley Joslin Store Co.,* 125 Colo. 367, 243 P.2d 394 (1952). Although both the plaintiffs and the defendants in this case treated *res ipsa loquitur* as a separate claim for relief, the trial court properly applied it as an evidentiary rule.[10]

 After finding that the ammonium sulfate was contaminated with 2,4–D, and that the farmers had met the requirements for the use of *res ipsa loquitur,* the trial court required American to come forward with exculpatory evidence and to rebut the presumption of negligence. American did not rebut the presumption of negligence and was held liable for the damage to the farmers' potato crops, and there is ample evidence in the record to support that conclusion.

 The trial court and the parties have continually referred to the negligence claim as negligent manufacturing and have tailored that term to this particular case. Negligent manufacturing is not, however, a separate claim for relief and is nothing more than a method for establishing general negligence.

Accordingly, we reverse and remand this case to the court of appeals with directions to reinstate the judgment entered by the trial court against American.

---

9. The court of appeals amended opinion states that American's pleadings claimed the protection of section 13–21–402(1). *Deacon v. American Plant Food Corp.,* 782 P.2d at 863. The record does not support that finding.

10. *Res ipsa loquitur* allows an inference of breach of duty and causation, and requires the defendant to prove by a preponderance of the evidence that he was not negligent. *See Weiss v. Axler,* 137 Colo. 544, 328 P.2d 88 (1958); *Greenwell v. Gill,* 660 P.2d 1305 (Colo.App.1982).

*Res ipsa loquitur* may be employed when: (1) the event is the kind that ordinarily does not occur in the absence of negligence; (2) other responsible causes, including the conduct of plaintiff and third persons, are sufficiently eliminated by the evidence; and (3) the indicated negligence is within the scope of the defendant's duty to the plaintiff. *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo.1980).