**BOB BLAKE BUILDERS, INC.,**
a Wyoming corporation,
Plaintiff–Appellee,

v.

**William D. GRAMLING and Carmen M. Gramling, Defendants–Appellants.**

No. 99CA2423.

Colorado Court of Appeals,
Division IV.

Jan. 18, 2001.

Hasler, Fonfara & Maxwell, LLP, Timothy L. Goddard, Fort Collins, CO, for Plaintiff–Appellee.

Dean & Reid, LLC, Daniel W. Dean, Fort Collins, CO, for Defendants–Appellants.

Opinion by Judge CASEBOLT.

In this breach of contract action concerning construction work performed upon a home, defendants, William D. and Carmen M. Gramling, appeal the judgment in favor of plaintiff, Bob Blake Builders, Inc. (BBB). We affirm in part, reverse in part, and remand for further proceedings.

Defendants contracted to purchase a modular home from a company selling such homes (seller) but wanted modifications and a room to be added. Seller suggested defendants use BBB, a Wyoming corporation, which was the company that seller regularly employed to do "stitch work," i.e., combining the various components of a modular home. Members of the same extended family owned and ran seller and BBB.

Defendants signed a construction contract with BBB, agreeing to pay it on a cost-plus basis with the work to be performed according to architectural drawings and on-site instructions that defendants would provide. Defendants gave BBB $6,000 when work began.

Disputes arose as to what modular home options and stitch work were included under defendants' contract with seller and what modifications and additions were to be made pursuant to the separate contract with BBB. When the relationship between BBB and defendants deteriorated, BBB billed defendants $36,836 for work performed, which defendants refused to pay. Consequently, BBB placed a mechanic's lien on defendants' property, claiming $30,836, the difference between the amount billed and the $6,000 previously paid.

BBB then commenced this proceeding for breach of contract and to enforce its lien. Defendants asserted various affirmative defenses and counterclaims. Seller was also joined in the action.

The trial court granted BBB's motion for summary judgment and its motion for a directed verdict dismissing the counterclaims. On claims other than the lien foreclosure, the jury found in favor of BBB as against defendants and partially in favor of defendants as against seller. Only the judgment in favor of BBB is at issue in this appeal.

I.

■ Defendants first contend that BBB was not a "person" entitled to claim a mechanic's lien because, at the time it recorded its lien, it was a foreign corporation not authorized to do business in Colorado. We disagree.

■ Under § 38–22–101(1), C.R.S.2000, a "person" may file a mechanic's lien for the value of services, labor, and materials furnished to another's property. The statute explicitly defines a "person" to include a corporation. Section 38–22–101(6), C.R.S. 2000.

When interpreting a statute, we adopt the construction that best gives effect to the legislative scheme. *Slack v. Farmers Insurance Exchange*, 5 P.3d 280 (Colo.2000). In doing so, we must look to the plain meaning of the words employed. Section 2–4–101, C .R.S.2000; *Park County Sportsmen's Ranch LLP v. Bargas*, 986 P.2d 262 (Colo. 1999). All general terms must be liberally construed, taking into account the context of the entire title or article. *See* § 2–4–212, C.R.S.2000; *Trinity Universal Insurance Co. v. Hall*, 690 P.2d 227 (Colo.1984); *In re Marriage of Davisson*, 797 P.2d 809 (Colo. App.1990).

Under the plain language of the statute, "person" includes a corporation, without limitation. Nothing in the statute imposes a residency requirement, whether upon individuals or corporations. We perceive nothing in the context of the mechanic's lien statutes as a whole that indicates a legislative intent to exclude foreign corporations, whether authorized to do business in the state or not, from the class of "persons" that may claim a lien.

■ Defendants rely upon § 7–115–102, C.R.S.2000. Under that statute, a foreign

corporation transacting business in this state may not maintain a proceeding in any court until an application for authority to transact business is filed. However, the assertion and filing of a lien is not a "proceeding in court" within the meaning of this statute. Furthermore, the prohibition against maintaining any action may be removed by applying for and obtaining an appropriate certificate. *Roldan Corp. v. District Court,* 716 P.2d 120 (Colo.1986). Obtaining such a certificate does not make a corporation a "person," as defendants contend. Rather, it merely removes a temporary corporate disability.

In addition, the failure of a foreign corporation to have authority to transact business in this state does not impair the validity of its corporate acts. Section 7–115–102(5), C.R.S. 2000. Filing a lien qualifies as a "corporate act" within the meaning of the statute.

■ A contrary interpretation would be nonsensical. Once properly formed, a corporation has existence and becomes a "person." *See Micciche v. Billings,* 727 P.2d 367 (Colo. 1986). To hold that a corporation loses such status because it is not qualified to do business in a particular state would elevate a corporate disability to a death—an unwarranted expansion.

■■ Defendants nevertheless ask us to apply a limited definition of "corporation" to the mechanic's lien statute. They point to § 7–101–401(11), C.R.S.2000, which defines a "corporation or domestic corporation" as "a corporation for profit which is not a foreign corporation."

We note first that the introductory clause of § 7–101–401 makes the definitions therein applicable to articles 101 to 117 of Title 7 of the Colorado Business Corporations Act. Hence, by its terms, this definition does not apply to § 38–22–101 of the mechanic's lien statute. In addition, we should not indiscriminately adopt definitions contained in one statute to apply to an unrelated statute. *See Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994). And, nothing in the plain language or the context of § 7–101–401(11) supports the use of this definition in determining the meaning of "person" under the mechanic's lien statutes.

Moreover, this definition is one of five general definitions concerning corporations contained in Title 7. *See* §§ 7–49.5–103(2), 7–90–102(10), 7–113–101(2) & 7–121–401(9), C.R.S.2000. This definition, like the others in that title, applies to statutory provisions dealing with the certification, formation, structure, and dissolution of Colorado corporations. A foreign corporation, already in existence by definition, would naturally not be included in such matters.

Here, it is undisputed that BBB was an existing corporation at the time it filed its lien. As such, it qualifies as a "person" entitled to file a lien under § 38–22–101.

## II.

■ Defendants next assert that the lien was void because the amount claimed was excessive. We disagree.

Section 38–22–128, C.R.S.2000, provides that anyone who knowingly files a lien for an amount greater than is due, without a reasonable possibility that the amount claimed is due, forfeits all rights to such lien.

■ A trial court's finding that a lien amount is not excessive may not be overturned if sufficiently supported by the evidence. *See E.B. Roberts Construction Co. v. Concrete Contractors, Inc.,* 704 P.2d 859 (Colo.1985).

■ When the terms of a contract or the amount due are in dispute and the evidence is conflicting, such issues are for the fact finder to determine. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.,* 713 P.2d 882 (Colo.1986).

■ An appellate court must determine from the record whether there is competent evidence from 'which a jury could have reached its verdict. *See H & H Distributors, Inc. v. BBC International, Inc.,* 812 P.2d 659 (Colo.App.1990).

Here, defendants assert that the amount actually due was far less than the amount of the lien. They claim that the contract scope included only a drawing for and construction of an additional room; thus, the only contractual obligation was for construction of that

room, and the unpaid balance for the work on that room was far less than the lien amount claimed.

However, the scope of the contract and the amount due were questions of fact. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra.* The lien statement claimed $30,836.22, and the jury found that defendants owed $30,832 under the contract. Since the record adequately supports the jury's finding that defendants owed this amount, we may not disturb it.

Accordingly, the trial court did not err in determining that the lien amount claimed, only four dollars greater than the amount awarded by the jury, was not excessive.

### III.

■ Defendants argue that the lien was void because it encumbered an excessive amount of their property. Specifically, they contend that BBB recorded a lien against four of their lots, while the work improved only one lot. We are not persuaded.

Defendants do not direct us to any relevant source of law that would render a lien void when it covers an excessive amount of property. Instead, defendants rely on the Colorado Fair Debt Collection Practices Act, § 12–14–101, et seq., C.R.S.2000, and the Colorado Consumer Protection Act, § 6–1–101, et seq., C.R.S.2000, asserting that those statutes prohibit certain conduct, and by analogy should prevent this conduct. We find nothing in those statutes that would render this lien void.

Moreover, we note, as did the trial court, that since defendants posted a bond to release their property from the lien before trial, no property at all, let alone an excessive amount, was burdened when BBB sought to enforce its lien.

### IV.

■ Defendants next contend that, because BBB was a foreign corporation doing business in this state without authority, its contract with them was illegal and unenforceable, violated public policy, and consequently did not support a mechanic's lien. We disagree.

■ Defendants cite a provision of the Colorado Consumer Protection Act, § 6–1–605, C.R.S.2000, which requires sellers of manufactured housing to escrow advance payments, give a firm date for delivery, and provide notice of a right of rescission. However, as defendants acknowledge, that statute became effective after the contract here was executed. Moreover, BBB was not a seller of the home. Hence, the statute has no application here.

Defendants also rely upon article XV, § 10 of the Colorado Constitution, which provides that no foreign corporation shall do business without having a known place of business and an authorized agent for service of process in this state, and upon § 7–115–102, which precludes maintenance of any court proceeding by a foreign corporation until an application for authority is filed. That reliance is misplaced.

Even if a foreign corporation does business in Colorado without applying for a certificate, the consequences are limited. The foreign corporation has no capacity to sue in Colorado courts until it applies for a certificate. Section 7–115–102(1), C.R.S.2000; *Municipal Subdistrict, Northern Colorado Water Conservancy District v. Getty Oil Exploration Co.*, 997 P.2d 557 (Colo.2000).

■ Here, even though BBB applied for and received a certificate only after it commenced this proceeding, its application cured any deficiency. And, no other consequences relevant to this proceeding flow from failing to take the appropriate action before commencement of a lawsuit.

■ In addition, the statute specifically provides that the failure of a foreign corporation to obtain authority to transact business in this state does not impair the validity of its corporate acts. Section 7–115–102(5). Entering into a contract is a fundamental corporate act. *See National Ass'n of Credit Management v. Burke*, 645 P.2d 1323 (Colo.App. 1982) (construing predecessor of § 7–115–102(5)). Indeed, "the failure of the corporation to [apply for a certificate] does not affect the validity of corporate acts, including con-

tracts. Thus, a contract made by a nonqualified corporation may be enforced by the corporation simply by obtaining a certificate." *Model Business Corporation Act Annotated* § 15.02 comment (3d ed.1999).

Here, although BBB could not enforce its contract with defendants in court or foreclose its lien in court until it applied for a certificate of authority, the contract was nevertheless legal. Furthermore, because the contract was legal, public policy is not offended by its enforcement. *Cf. Network Affiliates, Inc. v. Robert E. Schack, P.A.,* 682 P.2d 1244 (Colo.App.1984) (contract that exceeded limited corporate purpose provided under C.R.C.P. 265 was illegal and unenforceable).

Accordingly, we reject this contention.

## V.

Defendants assert that BBB's application for a certificate of authority contained a misrepresentation and that, therefore, it was precluded from recovery here. We disagree.

Under C.R.C.P. 8(c), a party waives all affirmative defenses that are not presented in the answer to the complaint. *See Duke v. Pickett,* 168 Colo. 215, 451 P.2d 288 (1969).

Here, defendants' argument was first raised in a post-trial motion to amend the judgment or for judgment notwithstanding the verdict. This defense was not a part of the pleadings nor was it argued at trial. Under these circumstances, we will not consider it on appeal. *See Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424 (Colo.App. 1985).

## VI.

Defendants assert the trial court erred in granting a directed verdict and awarding attorney fees to BBB on the counterclaim for tortious interference with a contract. We disagree as to the verdict, but conclude that the award of fees cannot stand.

## A.

Tortious interference with a contract occurs when a defendant intentionally induces a third party to breach or interfere with the performance of a contract that the third party has with the plaintiff. *Colorado National Bank v. Friedman,* 846 P.2d 159 (Colo.1993).

The trial court may grant a motion for directed verdict only when the evidence compels a conclusion with which a reasonable fact finder could not disagree, and no evidence or inference has been presented at trial upon which a verdict against the moving party could be sustained. *Gorab v. Zook,* 943 P.2d 423 (Colo.1997). In considering such a motion, the court must view all of the evidence in the light most favorable to the non-moving party. *Fair v. Red Lion Inn,* 943 P.2d 431 (Colo.1997).

On appeal, a reviewing court also must consider all evidence in the light most favorable to the non-moving party, indulging every reasonable inference in that party's favor. *Evans v. Webster,* 832 P.2d 951 (Colo. App.1991).

Here, defendants asserted that BBB had tortiously interfered with their contract with seller. The claim was predicated upon Carmen Gramling's recollection of a telephone conversation she had with a representative of seller. She testified that, during their conversation, the representative admitted that seller was delaying delivery of cabinets that were part of their contract because an officer of BBB had told the representative not to deliver them until BBB was paid for its construction work. Seller's representative offered contrary testimony, asserting that he told Carmen Gramling that seller was delaying delivery of the cabinets only until seller, not BBB, was paid.

A tape recording of this conversation was offered at trial. It revealed that, contrary to Carmen Gramling's recollection, the representative stated that his company could not deliver the cabinets until seller was paid the amount due on its own contract with defendants.

In addition, letters between the parties made it clear that seller was demanding only that it be paid before it completed performance of the contract.

Given the authenticity of the taped conversation, and the additional evidence, even viewing the evidence in the light most favorable to defendants, no reasonable fact finder could have found for defendants on this issue. Consequently, the trial court properly directed a verdict on this claim.

### B.

A trial court may award reasonable attorney fees against any party who has brought or defended a civil action that lacks substantial justification. Actions that lack substantial justification are those that are substantially frivolous, substantially groundless, or substantially vexatious. Section 13–17–102(2), C.R.S.2000.

When awarding attorney fees, the trial court must specifically set forth the reasons for the award. Section 13–17–103, C.R.S.2000. If the trial court fails to provide findings sufficient to afford review of the reasons for the award, an appellate court must reverse the award and remand for further proceedings. *Maul v. Shaw*, 843 P.2d 139 (Colo.App.1992).

Here, the parties disputed the propriety of awarding attorney fees on the counterclaim for tortious interference with a contract, although they stipulated that the $2,250 BBB spent in defending this claim was a reasonable amount. The trial court, apparently relying on the stipulated amount, awarded $2,250 in attorney fees to BBB without stating the reasons for the award. Since the record contains no findings that would enable us to review the trial court's decision, we conclude that this award cannot stand. We therefore must remand the matter to the trial court for it to make findings of fact and conclusions of law on this claim sufficient for appellate review.

### VII.

Defendants contend that the trial court erred in granting summary judgment and awarding attorney fees to BBB on the counterclaim for outrageous conduct. Again, we find no error in the judgment, but agree that the award of fees cannot stand.

### A.

Appellate review of an order granting a motion for summary judgment is *de novo*. *Vail/Arrowhead, Inc. v. District Court*, 954 P.2d 608 (Colo.1998).

Summary judgment is a drastic measure and appropriate only when the pleadings and supporting documents demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Vail/Arrowhead, Inc. v. District Court, supra*.

The non-moving party is entitled to all favorable inferences that may be drawn from the undisputed facts, and all doubts as to whether a triable issue of fact exists must be resolved against the moving party. *Compass Insurance Co. v. City of Littleton*, 984 P.2d 606 (Colo.1999).

Before permitting the presentation of a claim for outrageous conduct to the jury, the trial court must rule on the threshold issue of whether the allegations of outrageous conduct are sufficient as a matter of law. *Coors Brewing Co. v. Floyd*, 978 P.2d 663 (Colo.1999).

The level of outrageousness required to create liability for intentional infliction of emotional distress is extremely high. Liability has been found only when the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Coors Brewing Co. v. Floyd, supra*.

Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Restatement (Second) of Torts § 46 comment d (1965). Persons must necessarily be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind. *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399 (1978).

Here, the primary conduct in issue occurred during a telephone conversation between an officer of BBB and William Graml-

ing concerning the dispute over nonpayment, in which the officer threatened to "rip the house down." Defendants telephoned a sheriff's deputy, who spoke with the officer. The sheriff then assured defendants that the threat would not be carried out.

Defendants additionally asserted that BBB: (1) flouted corporate law by failing to obtain a certificate of authority, (2) double billed, (3) withheld contract performance, (4) concealed intra-corporate control between BBB and seller, and (5) attempted to modify the purchase agreement for the home.

This evidence, viewed in the light most favorable to defendants, shows merely that the officer threatened them in contemplation of litigation. The threat was momentary in nature and was soon retracted. Hence, it cannot be considered as so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency. The balance of the conduct is also insufficient to meet the high standard.

Therefore, the trial court did not err in granting summary judgment on this issue.

### B.

As with the tortious interference claim, the parties disputed the propriety of awarding attorney fees on the counterclaim for outrageous conduct, though they had stipulated to the amount of any such fees. The trial court awarded the stipulated amount of $700 without making any findings as to its reasons for awarding the fees. Since the record again contains no findings that would enable us to review the trial court's decision, we conclude that this award cannot stand. We therefore remand to the trial court for entry of findings of fact and conclusions of law on this claim sufficient for appellate review.

### VIII.

Pursuant to C.A.R. 38, BBB has requested damages of double costs and reasonable attorney fees spent in defending the appeal. We reject this claim.

An appeal is frivolous if the appellant presents no rational argument based on the evidence or law in support of his or her claim or defense. *Mission Denver Co. v. Pierson,* 674 P.2d 363 (Colo.1984); *Lego v. Schmidt,* 805 P.2d 1119 (Colo.App.1990).

We conclude the appeal is not frivolous. Defendants have succeeded in obtaining a remand as to some contentions and have presented rational argument on the claims. Under the circumstances, we decline to award attorney fees or double costs. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925 (Colo.1993).

That part of the judgment awarding attorney fees to BBB is reversed. The balance of the judgment is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

MARQUEZ and TAUBMAN, JJ., concur.