**Michele R. PEARSON and Denise L. Fahy, Plaintiffs–Appellees,**

v.

**William E. KANCILIA, Defendant–Appellant.**

**No. 01CA1747.**

Colorado Court of Appeals, Division IV.

March 27, 2003.

Rick DeWitt, Denver, Colorado, for Plaintiffs–Appellees.

Hall & Evans, L.L.C., Alan Epstein, Michael W. Jones, Denver, Colorado, for Defendant–Appellant (On the Briefs).

William E. Kancilia, Pro Se.

Opinion by Judge DAILEY.

Defendant, William E. Kancilia, appeals from the judgment entered in favor of plaintiff Michele R. Pearson on claims of chiropractic negligence, outrageous conduct, and invasion of privacy and in favor of plaintiff Denise L. Fahy on claims of chiropractic negligence and outrageous conduct. We affirm.

Defendant is a chiropractor. Plaintiffs were his patients, and later his employees. Each plaintiff testified she was emotionally vulnerable because of her marital situation. Each plaintiff testified that she had a sexual relationship with defendant. Defendant denied that he had been sexually involved with either plaintiff.

Pearson testified that, while employed by defendant, she was subjected by him to unwanted jokes of a sexual nature, unwanted sexual advances, and unwanted sexual contact. Although she admitted her first sexual encounter was consensual, she related that she thereafter repeatedly told him that she did not want to have sex with him. Nonetheless, he demanded that she continue having sex with him at both her apartment and his office. She maintained she did so because she felt she had no choice in the matter: as his employee, she was afraid of losing her job if she refused him sex. She based her fear upon defendant being the type of person who "if you didn't scratch his back, he wouldn't scratch yours." Defendant made such a remark when Pearson eventually absolutely refused to have sex with him. Thereafter, according to Pearson, defendant fully exposed his penis to her at the office on several occasions.

In Fahy's case, a sexual and romantic relationship developed after she had received treatment by defendant for severe migraine headaches. Fahy testified that several months into their sexual relationship, she expressed, on several occasions, a desire to end the relationship so she could put more time into preserving her marriage. She testified that, among other things, defendant said he would not treat her if she did not have sex with him.

Fahy broke off the affair, and Pearson stopped working for defendant, after each discovered that defendant was intimate with the other during the same period of time.

The jury awarded Pearson $237,685 in compensatory damages on her chiropractic negligence claim, $100,000 in compensatory and punitive damages on her claim for outrageous conduct, and $200,000 in compensatory and punitive damages on her claim for invasion of privacy. The jury awarded Fahy $229,400 in compensatory damages on her chiropractic negligence claim and $100,000 in compensatory and punitive damages on her claim for outrageous conduct. The trial court entered judgment accordingly.

Defendant appeals only that part of the judgment concerning plaintiffs' claims for outrageous conduct and invasion of privacy.

## I. Heart Balm Statute

■ Initially, defendant contends that, because plaintiffs' outrageous conduct and invasion of privacy claims are claims of seduction, they are barred by the heart balm statute, § 13–20–202, C.R.S.2002. We will not, however, consider this contention because it concerns an affirmative defense which should have been raised by defendant in his answer rather than in his post-trial motion for judgment notwithstanding the verdict. *See Bob Blake Builders, Inc. v. Gramling,* 18 P.3d 859, 865 (Colo.App.2001).

## II. Sufficiency of the Evidence

Defendant also contends that there was insufficient evidence to support the verdicts in favor of plaintiffs on their outrageous conduct claims and in favor of plaintiff Pearson on her invasion of privacy claim. We disagree.

■ In reviewing a claim of insufficient evidence, we view the evidence in the light most favorable to the parties seeking to sustain the judgment—here, the plaintiffs—and if there is any evidentiary basis for the verdict, it may not be disturbed on review. *Borquez v. Robert C. Ozer, P.C.,* 923 P.2d 166, 175 (Colo.App.1995), *aff'd in part and rev'd in part,* 940 P.2d 371 (Colo.1997).

### A. Outrageous Conduct

■ The elements of outrageous conduct are: (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *McCarty v. Kaiser–Hill Co.,* 15 P.3d 1122, 1126 (Colo. App.2000).

■ Here, defendant contests only the sufficiency of the evidence with respect to the first element, outrageous conduct. As to that element, the level of outrageousness required to create liability is extremely high. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient. Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice. *Bob Blake Builders, Inc. v. Gramling, supra,* 18 P.3d at 866; *see also Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1350 (Colo.1988)(facts must so arouse resentment against the defendant in average members of the community as to lead them to exclaim, "Outrageous!").

■ An outrageous conduct claim may be submitted to the jury only if reasonable persons could differ on whether the defendant's conduct was sufficiently outrageous. *Coors Brewing Co. v. Floyd,* 978 P.2d 663, 665 (Colo.1999). Whether reasonable persons could differ on the outrageousness issue is a question of law subject to de novo review by this court. *See Spencer v. United Mortgage Co.,* 857 P.2d 1342, 1345 (Colo.App. 1993).

The trial court denied defendant's motion for directed verdict because

[i]n this case, we not only have allegations that a healthcare provider had sex with a patient, which by itself might be outrageous enough, but we also have allegations that there were demands made on each [p]laintiff in return for that, employment-related demands as to Ms. Pearson, health-treatment demands as to Ms. Fahy.

Although Colorado's appellate courts have not yet addressed the subject, courts elsewhere have recognized claims for outrageous conduct based on unwanted and egregious sexual harassment in the workplace. *See, e.g., Stewart v. Thomas,* 538 F.Supp. 891, 894 (D.D.C.1982)(allowing outrageous conduct claim to go forward where complaint alleged that the employer touched the employee in a sexual manner, caressed her body, attempted to kiss her, and verbally pressured her for sexual relations); *Guthrie v. Conroy,* 152 N.C.App. 15, 23, 567 S.E.2d 403, 409 (2002)(upholding plaintiff's outrageous conduct claim against co-worker, based upon allegations of obscene language, sexual advances towards plaintiff, alleged touching or rubbing neck and shoulders, and statements expressing desire to engage in sexual relations with plaintiff); *Bushell v. Dean,* 781 S.W.2d 652, 658 (Tex.App.1989)(outrageous conduct evidenced, in part, by supervisor's

off-color jokes, discussion of marital problems of a sexual nature, attempts to kiss plaintiff, touching her several times, and declaration of his love and desire for a sexual encounter), *rev'd on other grounds,* 803 S.W.2d 711 (Tex.1991).

Further, "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he [or she] has actual or apparent authority over the other, or the power to affect the other's interests." *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370, 1377 (Colo.App.1982)(internal quotation marks omitted), *aff'd,* 691 P.2d 1138 (Colo. 1984); *accord Spahn v. International Quality & Productivity Center,* 211 F.Supp.2d 1072, 1076 (N.D.Ill.2002)("when, as here, the defendant has some degree of power over the plaintiff, the severity of the conduct that plaintiff need allege decreases as the defendant's level of control increases")(internal quotation marks omitted); *see also Guthrie v. Conroy, supra,* 152 N.C.App. at 23, 567 S.E.2d at 409 ("an unfair power relationship between defendant and plaintiff" factored into outrageous conduct analysis).

Here, there was evidence that Pearson was subjected to sexual jokes, advances, contact, and other lewd behavior, nearly all of which occurred while she was an employee in defendant's office. According to Pearson, most of this conduct was unwanted. Although she repeatedly told defendant that she did not want to have sex, he pressured her into doing so. Further, his behavior caused her to believe that she had no choice in the matter: if she did not comply, she would lose her job.

From this evidence, a jury could reasonably infer that defendant exploited his position of authority over Pearson as her employer to obtain what he ultimately wanted. We conclude that the trial court did not err in determining that reasonable people could find defendant's conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable. *See Jackson v. Kimel,* 992 F.2d 1318, 1326 (4th Cir.1993)(coerced sex in exchange for job benefits may constitute outrageous conduct); *Stewart v. Thomas, supra,* 538 F.Supp. at 894; *Tschantz v. Ferguson,* 97 Ohio App.3d 693, 708, 711, 647 N.E.2d 507, 517, 519 (1994)(noting a "superior's implied threat that if the employee did not participate in the sexual relationship termination ... would follow is repugnant;" and reversing summary judgment for supervisor, based on evidence that employee was financially dependent on job, supervisor used her as a "sex slave," and employee felt threatened because she knew how supervisor operated the office).

In Fahy's case, the jury could find that defendant exploited the doctor-patient relationship by, at several critical points, overcoming Fahy's reluctance to continue the relationship by threatening to withhold treatment for her severe migraine pain if she did not continue having sex with him. Under these circumstances, we conclude that reasonable minds could differ as to whether defendant's conduct was outrageous. *Cf. Gunter v. Huddle,* 724 So.2d 544, 547 (Ala.Civ.Ct.App.1998)(affirming summary judgment on outrageous conduct claim in part because there was no "evidence that [the patient] was obliged in any way to engage in sexual relations with [the doctor] as a prerequisite for treatment"); *McDaniel v. Gile,* 230 Cal.App.3d 363, 365, 281 Cal.Rptr. 242, 247 (1991) ("withholding by a retained attorney of legal services when sexual favors are not granted by a client and engaging in sexual harassment of the client constitute[d] acts of outrageous conduct").

Consequently, we reject defendant's argument that the evidence was insufficient to sustain the verdicts.

## B. Invasion of Privacy

Defendant next contends that the trial court erred in submitting Pearson's invasion of privacy claim to the jury. We disagree.

In Colorado, "invasion of privacy" encompasses three separate torts: (1) unreasonable intrusion upon the seclusion of another ("seclusion"); (2) unreasonable publicity given to another's private life ("disclosure"); and (3) appropriation of another's

name or likeness ("appropriation"). *Denver Publishing Co. v. Bueno,* 54 P.3d 893, 897 (Colo.2002).

■ Here, we are concerned with seclusion. To prevail on such a claim, "a plaintiff must show that another has intentionally intruded, physically or otherwise, upon the plaintiff's seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person." *Doe v. High–Tech Institute, Inc.,* 972 P.2d 1060, 1065 (Colo.App. 1998).

The absence of a definitive refusal to engage in sex does not defeat as a matter of law a claim for invasion of privacy.

In *Doe v. High–Tech Institute, Inc., supra,* 972 P.2d at 1067, the division adopted the test articulated in Restatement (Second) of Torts § 652B (1981), namely, that liability is to be imposed "if the intrusion would be highly offensive to a reasonable person." The division further stated, "Although intrusion upon seclusion clearly encompasses an intrusion upon a physical space held in seclusion by a person, the element of seclusion also encompasses intrusions into a person's private concerns based upon a reasonable expectation of privacy in that area." *Doe v. High–Tech Institute, Inc., supra,* 972 P.2d at 1068; *see also Cunningham v. Dabbs,* 703 So.2d 979, 984 (Ala.Civ.App.1997)(summary judgment denied on employee's claim of invasion of privacy based on evidence of employer's sexual propositions and inappropriate physical contact with the employee; court found a material fact issue existed whether employer's conduct unreasonably intruded into the employee's private affairs).

Pearson based her invasion of privacy claim on evidence that defendant repeatedly came to her apartment early in the morning and demanded to have sex with her. Initially, he arrived with very little advance warning, and he came to her apartment for sex three times a week.

Defendant maintains that he went to Pearson's apartment pursuant to his romantic, sexual relationship with her. However, the jury was free to determine which version of the facts it would accept. As noted by the

trial court in denying defendant's motion for directed verdict:

> The facts do establish a reasonable inference that when the Defendant allegedly went to the Plaintiff Pearson's home, [he] went there for the purpose of engaging in sex, and went there purportedly against her will, and she let him in because of the employment relationship and the fear of losing her job; that could amount to a reasonable juror concluding that there has been an intrusion on her solitude.

■ Pearson's psychologist testified that defendant "now was intruding into her private space" and that "[o]ur homes are our sanctuaries ... [a]nd now he has demonstrated to her not only can he control her and manipulate and maneuver her during her work hours, but he can now do this in her own residence, her own domicile, her own safe place."

Under the circumstances, we reject defendant's contention that the evidence was insufficient to support the verdict on Pearson's invasion of privacy claim.

### III.  Prejudgment Interest

Finally, in his opening brief, defendant contended that the trial court erred in calculating prejudgment interest on plaintiffs' negligence claims. However, because defendant withdrew this contention in his reply brief, we need not address it on appeal.

Accordingly, the judgment is affirmed.

Judge ROTHENBERG and Judge KAPELKE concur.