Eric GREEN, individually and next friend of Blake Green, a minor; Rosemary Green, individually and next friend of Blake Green, a minor; Dorothy Platenberg; and Brenda DeMuth, Plaintiffs–Appellants,

v.

QWEST SERVICES CORPORATION, f/k/a Qwest Corporation; Qwest Communications Corporation; and Orius Telecommunication Services, Inc., Defendants–Appellees.

No. 04CA1938.

Colorado Court of Appeals, Div. II.

Feb. 23, 2006.

Lindquist & Vennum, P.L.L.P., Charles F. Brega, Ann H. Cisneros, Denver, Colorado, for Plaintiffs–Appellants.

Treece, Alfrey, Musat, and Bosworth, P.C., Thomas N. Alfrey, Robert J. Zavaglia, Jr., Denver, Colorado, for Defendants–Appellees Qwest Services Corporation and Qwest Communications Corporation.

Senter, Goldfarb, & Rice, L.L.C., John D. Hayes, Denver, Colorado, for Defendant–Appellee Orius Telecommunication Services, Inc.

ROTHENBERG, J.

Plaintiffs, Eric and Rosemary Green, Dorothy Platenberg, and Brenda DeMuth (homeowners), appeal the trial court order granting partial summary judgment in favor of defendants, Qwest Services Corporation, Qwest Communications Corporation, and Orius Telecommunication Services, Inc. We affirm.

## I.

In October 2002, Platenberg contacted Qwest for a telephone replacement line. Qwest contacted Orius, and Orius agreed to perform the job. According to the work order, installation of the new phone line would require Orius to bore under a driveway owned by Eric and Rosemary Green to connect Platenberg's phone line to a hookup station. Orius called the Utility Notification Center of Colorado (UNCC) and requested that underground utilities be located, but the ·request submitted by Orius only indicated that Platenberg's home required a "utility locate."

The utilities on Platenberg's property were located and marked, but snow prevented Orius's employees from excavating. Therefore, Orius called UNCC and requested a second locate at the same site. Thereafter, a second utility locate was performed on Platenberg's property.

Orius's employees performed the telephone line repair, but while they were boring under the Greens' driveway, they nicked the natural gas line servicing the Greens' home. This caused an explosion which completely destroyed the Greens' home and the second story of Platenberg's home. It also damaged DeMuth's home.

Homeowners filed this action alleging five claims for relief, including outrageous conduct claims against Orius for its conduct, and against Qwest based on vicarious liability.

Defendants moved for partial summary judgment seeking dismissal of the outrageous conduct claims. The trial court granted the motion, finding that "Orius's conduct does not rise to the level of recklessness or outrageousness to sufficiently establish a cause of action for outrageous conduct." The court later denied homeowners' motion to reconsider, and certified its order of dismissal as final pursuant to C.R.C.P. 54(b).

## II.

Homeowners contend the trial court erred in concluding their allegations regarding the conduct of Orius and Qwest did not establish a cause of action for outrageous conduct. We disagree.

We review de novo a grant of summary judgment. *West Elk Ranch, L.L.C. v. United States*, 65 P.3d 479 (Colo.2002).

Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo. 2004). The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini v. Smith*, 42 P.3d 629 (Colo.2002).

There are numerous published cases in Colorado involving gas explosions, but none included a claim for outrageous conduct. *See Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163 (1978); *Lewis v. Emil Clayton Plumbing Co.,* 25 P.3d 1254 (Colo.App.2000); *Rojhani v. Meagher,* 22 P.3d 554 (Colo.App. 2000); *Bennett v. Greeley Gas Co.,* 969 P.2d 754 (Colo.App.1998); *U.S. Fid. & Guar. Co. v. Salida Gas Serv. Co.,* 793 P.2d 602 (Colo. App.1989), *overruled on other grounds by Smith v. Zufelt,* 880 P.2d 1178 (Colo.1994); *Hartford Fire Ins. Co. v. Pub. Serv. Co.,* 676 P.2d 25 (Colo.App.1983); *Chutich v. Samuelson,* 33 Colo.App. 195, 518 P.2d 1363 (1973), aff'd in part and rev'd in part, 187 Colo. 155, 529 P.2d 631 (1974). Generally, the plaintiffs in those actions alleged negligence, gross negligence, or statutory violations.

Thus, homeowners' contention that defendants' conduct in excavating on or near a natural gas line on their properties was sufficiently extreme to establish a cause of action for outrageous conduct appears to be an issue of first impression in Colorado.

■ The elements of outrageous conduct are that (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress. *Culpepper v. Pearl Street Bldg., Inc.,* 877 P.2d 877 (Colo.1994); *Pearson v. Kancilia,* 70 P.3d 594 (Colo.App.2003).

■ Before permitting a plaintiff to present a claim for outrageous conduct to the jury, the trial court must rule on the threshold issue whether the plaintiff has alleged conduct that is outrageous as a matter of law. *Coors Brewing Co. v. Floyd,* 978 P.2d 663 (Colo.1999); *Bauer v. Sw. Denver Mental Health Ctr., Inc.,* 701 P.2d 114, 118 (Colo. App.1985)("If, after viewing the evidence in the light most favorable to plaintiff, the court determines that no reasonable person could conclude that the defendant's conduct was outrageous, summary judgment is appropriate."). In making that determination, the totality of the defendant's conduct must be evaluated. *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo.App.1982).

A.

Initially, we reject homeowners' contention that the trial court here employed an incorrect legal standard because it failed to consider defendants' reckless conduct. The court's ruling reflects that it was aware defendants' alleged reckless conduct could sustain a claim for outrageous conduct, because the court stated: "A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person."

In any event, whether reasonable persons could differ on the outrageousness issue is a question of law and is subject to de novo review. *See Spencer v. United Mortgage Co.,* 857 P.2d 1342 (Colo.App.1993).

B.

■ The tort of outrageous conduct was designed to create liability for a very narrow type of conduct. Such liability can be found only if the defendant's conduct toward another is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Destefano v. Grabrian,* 763 P.2d 275, 286 (Colo.1988); *Bob Blake Builders, Inc. v. Gramling,* 18 P.3d 859, 865 (Colo.App.2001); *see also Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

For example, in *Coors Brewing Co. v. Floyd, supra,* the supreme court concluded as a matter of law that an employer's alleged conduct of instructing its employee to conduct an illegal undercover narcotics investigation, laundering money to fund an investigation, and firing the employee as a scapegoat to cover up the involvement in criminal activity was not sufficiently outrageous to support the employee's outrageous conduct claim. The court stated:

For the purposes of this appeal, we accept as true Floyd's allegations that Coors engaged in an extensive criminal conspiracy involving illegal drugs and money launder-

ing and that Coors fired Floyd to scapegoat him for these crimes. However, we find that the outrageousness of Coors's alleged criminal conduct towards society—conduct that Floyd participated in—is irrelevant to Floyd's claim as an individual tort plaintiff seeking to sue Coors. *To assess Floyd's tort claim, we focus on Coors's behavior toward Floyd* and whether it was "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." As a matter of law, we hold that Floyd's allegations fail to meet this exacting standard. *Coors Brewing Co. v. Floyd, supra,* 978 P.2d at 666 (emphasis added; quoting *Rugg v. McCarty,* 173 Colo. 170, 176, 476 P.2d 753, 756 (1970)).

The fact that an accident occurred while the defendant was engaged in an inherently dangerous activity does not elevate it to outrageous conduct. And, while an accidental act may be sufficient to state a claim for outrageous conduct and a defendant need not intend to harm the plaintiff to be liable, Colorado courts have characterized a defendant's actions as outrageous in only the most "extremely egregious" circumstances. *Coors Brewing Co. v. Floyd, supra,* 978 P.2d at 665; *see Rugg v. McCarty, supra* (harassment via telephone and mail and threats to garnish wages sufficient to support outrageous conduct claim); *Meiter v. Cavanaugh,* 40 Colo. App. 454, 580 P.2d 399 (1978)(outrageous conduct shown when attorney belligerently refused to vacate premises for subsequent tenant without regard for her poor medical condition and implied he had special influence in judicial proceedings).

Further, in all the cases we have found that have permitted outrageous claims to go to the jury, the defendants' conduct was *directed toward the plaintiffs. See Archer v. Farmer Bros. Co.,* 90 P.3d 228 (Colo.2004)(employer sent agents to fire long-term employee shortly after he suffered a heart attack; agents fired employee while he was resting in bed, partially dressed and they demanded immediate return of his keys to the company van); *Bohrer v. Church Mut. Ins. Co.,* 965 P.2d 1258 (Colo.1998) (minister liable for outrageous conduct for failing to refer his teenage counselee to another counselor after he became emotionally and sexually involved with her); *Bear Valley Church of Christ v. DeBose,* 928 P.2d 1315 (Colo.1996)(minister engaged in a pattern of inappropriate touching during child's counseling sessions); *Smith v. Bd. of Educ.,* 83 P.3d 1157, 1163 (Colo.App.2003)(female employee alleged that her supervisor pinched her as a form of sexual harassment and "verbally and physically harassed her"); *Pearson v. Kancilia, supra,* 70 P.3d at 596 (plaintiff testified that, while employed by defendant, "she was subjected by him to unwanted jokes of a sexual nature, unwanted sexual advances, and unwanted sexual contact"); *Chryar v. Wolf,* 21 P.3d 428 (Colo.App.2000)(landlord filed unlawful detainer against tenants for unpaid rent, but before court date, he entered tenants' apartment while they were away, removed their personal property, and placed it on the street with a sign saying "Free Take"); *Roget v. Grand Pontiac, Inc.,* 5 P.3d 341, 346 (Colo.App.1999)(cumulative effect of the defendant-car dealer's actions could constitute outrageous conduct, where "alleged course of conduct of the employees of [defendant] included strong-arming [plaintiffs] during negotiations, committing fraudulent acts, and falsifying documents related to the lease transaction"); *Munoz v. State Farm Mut. Auto. Ins. Co.,* 968 P.2d 126 (Colo.App.1998)(insurer refused to pay medical benefits to insured following accident).

Here, we assume for the purposes of our review that homeowners' allegations are true, and we view them in the light most favorable to homeowners. Homeowners alleged that (1) Orius sent two inexperienced employees to perform the inherently dangerous work of excavating near a natural gas line; (2) the employees were poorly trained and unsupervised; (3) Orius intentionally made inaccurate locate requests; (4) it did not comply with the notification requirements mandated by § 9–1.5–103, C.R.S.2005, by failing to request a locate for the Greens' property before excavation; (5) a gas line was marked running parallel to the street; and (6) Orius's employees were aware of the

markings before the excavation, including the gas line running toward the Greens' property.

We recognize the impact on homeowners of defendants' alleged conduct and the inconvenience, pain, and suffering it caused. The loss of an entire home and damage to multiple other homes is a severe consequence. However, we are required to look at defendants' conduct itself and not simply the consequences of that conduct. Viewing that conduct in the aggregate, we conclude it was not sufficiently egregious to establish a cause of action for outrageous conduct. While reasonable people could find defendants' alleged conduct was grossly negligent, we do not perceive it as so extreme in degree as to go beyond all possible bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community. *See English v. Griffith*, 99 P.3d 90 (Colo.App.2004); *see also Coors Brewing Co. v. Floyd, supra.*

Homeowners' reliance on *Clay v. Ferrellgas, Inc.*, 118 N.M. 266, 881 P.2d 11 (1994), is misplaced. In *Clay*, passengers in an automobile sued for personal injuries sustained when propane gas vapors leaked from a tank installed in the trunk of a car into the passenger compartment and exploded when the car was started. The court held that the employees' actions, when viewed in the aggregate, were sufficient to sustain an award for punitive damages. However, because the passengers there did not file an outrageous conduct claim, *Clay* is factually and legally distinguishable.

In summary, we conclude the trial court did not err in granting defendants' motion for partial summary judgment and in dismissing homeowners' outrageous conduct claims. *See Culpepper v. Pearl St. Bldg., Inc., supra.*

In light of our conclusion, we need not determine whether Orius acted recklessly, or whether Qwest is vicariously liable for Orius's actions.

## III.

■ Homeowners also contend the trial court abused its discretion by refusing to allow additional discovery before ruling on defendants' motion for partial summary judgment. Homeowners maintain that such discovery may have revealed additional evidence regarding defendants' awareness of risks to homeowners, their failure to institute training, policies, and procedures that could have prevented the harm inflicted, and their knowledge of the risks inherent in their conduct. We disagree.

■ Discovery rulings, including rulings limiting discovery, are within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion occurs only when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *Hock v. New York Life Ins. Co.*, 876 P.2d 1242 (Colo.1994); *People in Interest of S.G.*, 91 P.3d 443 (Colo.App. 2004).

Homeowners took four depositions before the trial court entered its order granting defendants' motion for partial summary judgment. This included depositions of the Orius employee who preformed the excavation, his supervisor, and the executive director of the UNCC. Thereafter, homeowners took three additional depositions, which included depositions of the pre-locate inspector who called in the utility locate requests for Orius, and of the foreman who was supervising the employee performing the excavation. Homeowners referenced the additional depositions in their supporting brief and attached the relevant portions for the trial court to review.

Although the trial court did not consider the three later depositions before it granted defendants' motion for partial summary judgment, it considered the additional evidence when it denied homeowners' motion to reconsider. We have also considered the additional discovery as presented in homeowners' opening brief in concluding that defendants' conduct was not sufficiently egregious to support a claim for outrageous conduct. Therefore, we conclude the trial court did not abuse its discretion by limiting discovery.

Order affirmed.

Judge GRAHAM and Justice

KIRSHBAUM * concur.