23CA1218 Golec v Boring 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1218
Eagle County District Court No. 19CV30164
Honorable Paul R. Dunkelman, Judge

Thomas Golec, Mara Lynn Looney, Mark K. Nicholson, Andrew H. Soliday,
Laurie A. Soliday, Andrew A. Soliday, and Jeanne M. Wicks,

Plaintiffs-Appellees and Cross-Appellants,

v.

Todd H. Boring and Chrystie Carter,

Defendants-Appellants and Cross-Appellees.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE KUHN
Yun and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Ferguson Schindler Law Firm, P.C., Michelle K. Schindler, Aspen, Colorado, for
Plaintiffs-Appellees and Cross-Appellants

Ridley, McGreevy & Winocur, P.C., Robert T. Fishman, Denver, Colorado;
Feldman/Wertz, LLP, Alan Feldman, Basalt, Colorado, for Defendants-
Appellants and Cross-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendants, Todd H. Boring and Chrystie Carter, appeal the judgment entered upon jury verdicts finding them liable to plaintiffs, Thomas Golec, Mara Lynn Looney, Andrew H. Soliday (Andy), Laurie A. Soliday, and Jeanne M. Wicks, for intentional infliction of emotional distress, negligent infliction of emotional distress, and nuisance.  Boring and Carter also appeal the judgment against them in favor of plaintiff, Mark K. Nicholson, for nuisance.  Finally, Boring appeals the judgment in favor of plaintiff, Andrew A. Soliday (Drew), on his nuisance claim.  On cross-appeal, Wicks, Nicholson, Andy, and Drew[1] appeal the jury's verdict in favor of Boring and Carter on their counterclaim for intrusion upon seclusion.  We affirm.

## I.    Background

¶ 2    At trial, the jury heard testimony that would have allowed it to find the following facts.  This case arose from a neighborhood dispute in rural Eagle County that started in 2017.  At that time,

_____

[1] Because three parties involved in this litigation share the last name Soliday, we refer to them for clarity collectively as the "Solidays" and individually by their first names as used in trial.  We intend no disrespect by doing so.

Wicks and her partner, Nicholson, were renting out parts of their property through Airbnb. They alleged that Boring and his partner, Carter, were dissatisfied with their short-term rental business and believed that Wicks was running a "porn ring"[2] at her property. So, they claim, Boring, Carter, and their neighbor, Joe Weinant, engaged in a pattern of behavior that was intended to drive Wicks and Nicholson out of the neighborhood.

¶ 3 Thus, one June afternoon, plaintiffs observed Weinant driving through the neighborhood on his all-terrain vehicle (ATV), shooting his handgun in the air, and screaming, "[Y]ou need to get the fuck out of here." Later that day, Boring and Carter went to Weinant's property where the three shot their guns and set off large fireworks late into the night.

¶ 4 The disruptive behavior didn't end there. Over the next five months, neighbors recorded roughly twenty-five separate incidents where Boring and Carter engaged in intense shooting at their property and other behavior that plaintiffs viewed as offensive. That

---

[2] The "porn ring" referred to Wicks's "orgasmic meditation" practice. Wicks testified at trial that while she was certified to coach orgasmic meditation, she never did so at the property.

included shooting large caliber firearms, at times for hours on end and well after midnight; playing loud music while constantly riding ATVs up and down the dirt road that runs through the neighborhood; playing a recording of a piercing shrieking sound, often after midnight; using a chain saw late at night; shining lights from a skid steer toward neighboring properties; and setting off fireworks during a statewide fire ban.

¶ 5 While Boring and Carter initially directed their behavior toward Wicks and Nicholson, other neighbors were impacted and took issue with it as well. In November 2017, Wicks and the Solidays obtained a temporary protection order against Boring and Carter, prohibiting them from possessing firearms and coming within 100 yards of the protected parties. But despite the protection order, and even though they moved out of the neighborhood in the summer of 2018, Boring and Carter continued to race ATVs and shoot guns at Weinant's property anytime they came back to visit. And after the protection order was vacated in November 2018, plaintiffs reported several additional incidents where Boring and Carter shot large caliber guns and engaged in other behavior they found objectionable late into the night.

3

¶ 6    Roughly two years after the first incident, plaintiffs filed this suit against Boring, Carter, and Weinant.  As relevant here, Golec, Looney, Wicks, and the Solidays asserted claims for intentional infliction of emotional distress (outrageous conduct); negligent infliction of emotional distress (NIED), which was pleaded in the alternative to the outrageous conduct claim; and nuisance. Nicholson only asserted a nuisance claim.  In response, Boring and Carter asserted a counterclaim for intrusion upon seclusion, alleging that plaintiffs were surveilling them by installing hidden cameras in the neighborhood.

¶ 7    The parties' first trial ended in a mistrial.  During the second trial, both sides moved for a directed verdict on their respective claims.  Boring and Carter contended that they were entitled to a directed verdict on the outrageous conduct claim because their conduct wasn't extreme and outrageous as a matter of law.  Boring and Carter also argued for a directed verdict on the NIED claim because plaintiffs failed to present any evidence that Boring and Carter subjected them to an unreasonable risk of physical harm, that they sustained physical injuries as a result of their emotional distress, or that those injuries were caused by Boring and Carter.

Plaintiffs contended that they were entitled to a directed verdict on the intrusion upon seclusion counterclaim because Boring and Carter failed to present evidence supporting the elements of that tort.

¶ 8      The trial court denied the motions.  At the conclusion of the eleven-day trial, the jury found that Golec, Looney, Wicks, Nicholson, Andy, and Laurie had prevailed on their claims against Boring, Carter, and Weinant.  It also found Boring and Weinant liable to Drew on his nuisance claim.  Finally, it found that Boring and Carter were entitled to judgment on their intrusion upon seclusion counterclaim against Wicks, Nicholson, Andy, and Drew. The jury awarded plaintiffs in total $2.52 million in compensatory and punitive damages, of which roughly $1.06 million was

apportioned to Boring and $1.1 million was apportioned to Carter.[3]
The jury awarded Boring and Carter $30,000 each on their
counterclaim.  Boring and Carter then filed a motion for a judgment
notwithstanding the verdict, which the trial court denied.

## II.  Analysis

¶ 9    On appeal, Boring and Carter contend that the trial court
erred by entering judgment against them because (1) the conduct
underlying the outrageous conduct claim wasn't extreme and
outrageous as a matter of law; (2) plaintiffs failed to establish their
alternative NIED claim because Boring's and Carter's actions didn't
subject plaintiffs to an unreasonable risk of physical harm, they

---

[3] The remainder of the award was apportioned to Weinant.  After
trial, the defendants each filed for bankruptcy relief in federal
district court, resulting in an automatic stay of this litigation.
Boring and Carter then asked for relief from the automatic stay so
that they could pursue their appeal, which the bankruptcy court
granted.  Accordingly, this court allowed Boring and Carter's appeal
and plaintiffs' cross-appeal to proceed, stayed Weinant's appeal,
and ordered Weinant to file status reports regarding his bankruptcy
every forty-nine days.  *Golec v. Boring*, (Colo. App. No. 23CA1218,
Jan. 5, 2024, and Mar. 26, 2024) (unpublished orders).  But after
Weinant failed to comply with the order requiring him to file
periodic status reports, this court dismissed the appeal as to him
with prejudice.  *Golec v. Boring*, (Colo. App. No. 23CA1218, Aug. 16,
2024) (unpublished order).

didn't suffer physical injuries, and didn't prove any injuries were caused by Boring and Carter; and (3) the jury's damages award was excessive and unsupported by the evidence in the record. We disagree with the first contention, and thus, need not address Boring and Carter's challenge to the alternative NIED claim. We also decline to address their last contention because they failed to preserve it for appeal.

¶ 10      On cross-appeal, Wicks, Nicholson, Andy, and Drew argue that the trial court erred by denying their motion for a directed verdict on Boring and Carter's counterclaim for intrusion upon seclusion. We disagree.

### A.      Standard of Review

¶ 11      We review de novo a trial court's denial of a motion for a directed verdict and a motion for a judgment notwithstanding the verdict. *Smith v. Surgery Ctr. at Lone Tree, LLC*, 2020 COA 145M, ¶ 8. In reviewing decisions on these motions, we employ the same standards as those the trial court must use. *See State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 26. That is, we view the evidence, and all inferences that reasonably may be drawn from it,

in the light most favorable to the nonmoving party. *Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 8.

¶ 12    When the motion concerns a question of fact, a directed verdict or judgment notwithstanding the verdict should be entered only when the evidence "compels the conclusion that reasonable jurors could not disagree and that no evidence or inference therefrom had been received at trial upon which a verdict against the moving party could be sustained." *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶ 19. Accordingly, "[a] court shouldn't grant either motion unless there is no evidence that could support a verdict against the moving party on the claim." *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶ 10. To the extent the motion involved a question of law, however, we review the decision de novo. *Boulders at Escalante LLC*, ¶ 19.

### B.    The Trial Court Didn't Err by Denying Boring and Carter's Motion for a Directed Verdict on the Outrageous Conduct Claim

¶ 13    Boring and Carter contend that the trial court erred by denying their motion for a directed verdict on plaintiffs' outrageous conduct claim because the conduct underlying that claim wasn't extreme and outrageous as a matter of law. We disagree.

### 1. Applicable Law

¶ 14    To prevail on a claim for outrageous conduct, a plaintiff must prove that (1) the defendant engaged in extreme and outrageous conduct; (2) they did so recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the conduct caused the plaintiff severe emotional distress. *Mackall v. JPMorgan Chase Bank, N.A.*, 2014 COA 120, ¶ 49. The level of outrageousness required to establish the first element of the claim is extremely high. *Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. App. 2003). "Only conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community, will suffice." *Id.* Accordingly, "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Id.*

¶ 15    A claim for outrageous conduct may be submitted to the jury only if the trial court determines that "the plaintiff's allegations of outrageous conduct are sufficiently outrageous as a matter of law." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999). In doing so, the court must evaluate outrageousness in the context of

the totality of the conduct, whether during a single incident or a series of incidents. *See Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292, 294 (Colo. App. 1982). If reasonable persons could differ on whether a series of acts is outrageous, the trial court must deny a motion for a directed verdict and submit the claim to the jury. *See Meiter v. Cavanaugh*, 580 P.2d 399, 401 (Colo. App. 1978); *see also Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002), *aff'd*, 90 P.3d 228 (Colo. 2004).

### 2. Discussion

¶ 16    Boring and Carter contend that the trial court erred by concluding that reasonable jurors could differ as to whether their conduct was sufficiently extreme and outrageous. They assert that "[d]ischarging firearms on private property in rural Colorado, riding ATVs in the same area, and sounding a bear alarm and [fire truck] siren on a handful of occasions over the course of years falls far short of" outrageous conduct.

¶ 17    But while Boring and Carter characterize their actions as "legal, intermittent, and at least to some extent, condoned by [p]laintiffs," we agree with the trial court that reasonable jurors could conclude that their conduct as a whole constituted a pattern

10

of harassment and intimidation sufficiently extreme and outrageous to create liability.

¶ 18    To begin, plaintiffs presented evidence that Boring's and Carter's actions were intended to force Wicks and Nicholson out of the neighborhood. To achieve that objective, Boring and Carter engaged in a series of inflammatory acts that intimidated not only their primary targets but also their other neighbors. Plaintiffs also presented evidence that after the neighbors complained, they too became the intended targets of the acts.

¶ 19    Those acts included consistent gunfire, both at Boring and Carter's and Weinant's property. It also included racing ATVs through the neighborhood, setting off fireworks, playing loud screeching sounds, and using a chain saw to make noise. Boring and Carter often engaged in these activities for hours at a time and late into the night. Indeed, Laurie testified that, between June and December 2017, she recorded roughly twenty-five separate incidents of this nature. Plaintiffs also testified about specific patterns to the acts targeting them. For example, they testified that when they or guests would arrive home and get out of the car, Boring or Carter would fire multiple shots.

¶ 20    True, after Wicks and the Solidays obtained the November 2017 temporary protection order prohibiting Boring and Carter from possessing firearms, there was a period during which they didn't shoot guns at their property. But the record also shows that the protection order didn't stop them from engaging in actions toward plaintiffs. Wicks testified that while the protection order was still in effect, Boring and Carter continued to race ATVs and shoot guns at Weinant's property. She recounted six incidents from August and September 2018 when they engaged in such conduct. And after the protection order was vacated a couple months later, Boring and Carter resumed late night shooting at their property. Indeed, the record shows that at least four such incidents occurred through May 2019, and that during one of them, Boring and Carter shot roughly 170 rounds in one night.

¶ 21    The record also shows that Boring and Carter were aware that their conduct was bothering plaintiffs and yet continued to engage in it. Wicks, Golec, Looney, and Laurie testified that each of them contacted Boring and Carter to voice their concerns about the shooting and other behavior that concerned them. Indeed, Golec sent Boring an email stating that the shooting had retriggered his

12

post-traumatic stress disorder (PTSD). And while it's true that plaintiffs' counsel later informed Boring and Carter that plaintiffs would be okay with the shooting and ATV riding under certain conditions, plaintiffs also presented evidence that Boring and Carter disregarded those requests.

¶ 22 This record contradicts Boring and Carter's argument that their actions occurred infrequently and were indistinguishable from common behavior in their rural neighborhood. Instead, it shows a series of disturbing incidents that Boring and Carter repeatedly engaged in even after having knowledge that those incidents affected plaintiffs' well-being, including causing Golec recurrence of his PTSD. *See Zalnis*, 645 P.2d at 294 (courts are more likely to find outrageous conduct in a series of incidents or a course of conduct than in a single incident); *see also Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 991 (Colo. App. 2011) (noting that a conduct may become outrageous by virtue of a defendant's knowledge that the plaintiff is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity).

¶ 23 This record also cuts against Boring and Carter's argument that because the purpose of their actions was solely to drive Wicks

and Nicholson out of the neighborhood, their conduct could be extreme and outrageous only as to those two plaintiffs. The remaining plaintiffs, they argue, "cannot establish an outrageous conduct claim based simply on the fact that those actions may have adversely affected them." But as is apparent from the above record, those other plaintiffs were more than just unintended victims of Boring and Carter's conflict with Wicks and Nicholson. They were subjected to the same behavior as Boring and Carter's primary targets.

¶ 24 Moreover, there is evidence in the record from which reasonable jurors could conclude that Boring and Carter also intended their actions to target the other plaintiffs in retaliation for those plaintiffs' opposition to their shooting and other activities. *See Green v. Qwest Servs. Corp.*, 155 P.3d 383, 386 (Colo. App. 2006) (noting that the conduct underlying an outrageous conduct claim must be directed toward the plaintiff); *cf. Coors Brewing Co.*, 978 P.2d at 666 (concluding that a defendant's conduct wasn't outrageous as a matter of law in part because it was directed toward society, not the plaintiff).

¶ 25    For example, Laurie recounted an incident when Boring made a finger gun gesture toward her, testifying that she perceived that act as a way for him to intimidate and terrify her.  She also recounted an incident when, in her words, "[Carter] tried to intimidate [her] by coming down a very narrow, icy stretch [of the dirt road] at high speeds and [she] had to get the heck out of the way."  Similarly, Looney testified that after she reported Boring and Carter to the police one day, they parked their ATVs in front of her house at around 1 a.m. the next morning.  Moreover, while Boring and Carter's property was roughly ten acres in size, Looney testified that they were shooting along her property line that was located only about twenty yards from her house.  And less than two months after Golec emailed Boring about how the shooting had retriggered his PTSD, Boring and Carter shot guns on the property bordering Golec's property.

¶ 26    Viewing the entire record in the light most favorable to plaintiffs, *see Woodard*, ¶ 8, we conclude that reasonable jurors could differ about whether Boring's and Carter's conduct as a whole was extreme and outrageous, *see Meiter*, 580 P.2d at 401.  Under

these circumstances, then, the trial court didn't err by denying their motion for a directed verdict on that issue.

### C. We Need Not Address Plaintiffs' Alternative NIED Claims

¶ 27 Boring and Carter next argue that the trial court erred by entering judgment on plaintiffs' NIED claims because the plaintiffs who ultimately prevailed against them — Golec, Looney, Wicks, Andy, and Laurie — failed to establish all the elements of that tort.

¶ 28 To prevail on their respective NIED claims, these plaintiffs were required to show that (1) Boring and Carter were negligent; (2) the negligent conduct created an unreasonable risk of physical harm that caused the plaintiff to fear for their safety; (3) the fear caused the plaintiff to suffer physical consequences or long-continued emotional disturbance; and (4) the plaintiff's fear was the cause of the damages sought. *See Draper v. DeFrenchi-Gordineer*, 282 P.3d 489, 496-97 (Colo. App. 2011); *see also Towns v. Anderson*, 579 P.2d 1163, 1164-65 (Colo. 1978); CJI-Civ. 9:2 (2024).

¶ 29 Boring and Carter challenge the second and third elements of NIED. Specifically, they argue that plaintiffs presented no evidence

that (1) Boring's and Carter's actions created an unreasonable risk of physical harm or (2) plaintiffs' emotional distress manifested itself in *physical injuries* that they *caused.*

¶ 30    However, we need not address the merits of these arguments in light of our conclusion that the trial court didn't err by entering judgment on plaintiffs' outrageous conduct claim. As we note above, plaintiffs pleaded NIED as an alternative theory of liability to their outrageous conduct claim. In doing so, they didn't argue that those two claims were based on different conduct or that they had suffered different damages for the two claims. Instead, the record shows that both claims were premised on the same conduct and that plaintiffs argued that they incurred one set of injuries and damages from that conduct. In other words, there was no distinction between harm that was caused negligently as opposed to intentionally.

¶ 31    Under these circumstances, NIED was merely an alternative theory under which plaintiffs sought to hold Boring and Carter liable for their actions. Because plaintiffs prevailed on their primary claim of outrageous conduct — and we affirm that judgment here — we need not consider whether the trial court erred

17

by entering judgment on plaintiffs' alternative NIED claim.[4]  *See*

*Winston Fin. Grp., Inc. v. Fults Mgmt., Inc.*, 872 P.2d 1356, 1358

(Colo. App. 1994) (affirming a trial court's judgment entered upon a

bench trial on one ground and declining to address the court's

alternative basis supporting that judgment).  And even if we were to

assume that the trial court erred, any such error would be harmless

given that the jury didn't award any separate damages for NIED.

*See* C.R.C.P. 61 (providing that an error in a civil case is harmless,

and thus doesn't require reversal, unless it affects a substantial

right of a party).

### D.    Boring and Carter Did Not Preserve Their Challenges to the Damages Awards

¶ 32    Boring and Carter challenge the jury's damages awards on

multiple grounds.  Specifically, Boring and Carter contend that the

jury erred by awarding

- damages for emotional distress to Wicks, Looney, Golec,

   Laurie, and Andy because those plaintiffs failed to present

---

[4] Plaintiffs agreed during oral argument that NIED was only an alternative theory of liability that we need not address if we affirm on the outrageous conduct claim.  Boring and Carter's counsel didn't disagree with that assertion.

evidence about how they calculated their requested damages;

- nonrecoverable litigation stress damages to Looney, Golec, Laurie, and Andy;

- damages for their annoyance and discomfort to Wicks, Nicholson, and Drew;

- damages for the loss of use and enjoyment of property to Wicks, Looney, Golec, Nicholson, Laurie, and Andy because those awards aren't supported by any competent evidence in the record; and

- other damages that are not recoverable under law, such as, (1) punitive damages to Wicks that were "based on the financial strain caused by this litigation"; and (2) derivative noneconomic damages to Andy based on his testimony that he had suffered emotional distress during an incident involving Boring's and Carter's conduct toward his wife Laurie, not him.

¶ 33 But the record shows that, except for the litigation stress issue listed in the second bullet point, Boring and Carter didn't even mention any of the other issues in the trial court. Their motion for

19

a directed verdict didn't focus on the issue of damages but only on the other elements of the outrageous conduct, NIED, and nuisance claims.  And while Boring and Carter argued in their motion for a judgment notwithstanding the verdict that the jury awarded excessive damages considering the nature of their conduct, that general challenge to the amount of damages wasn't supported by the specific arguments they pursue in this appeal.

¶ 34    Relying on *McCoy v. People*, 2019 CO 44, Boring and Carter contend that they are entitled to raise this challenge to the damages awards for the first time on appeal because it constitutes a sufficiency of the evidence claim.  But this is a civil case, not criminal case.  So we disagree.  *See Plaza del Lago Townhomes Ass'n v. Highwood Builders, LLC*, 148 P.3d 367, 372 (Colo. App. 2006) (concluding that a party failed to preserve a sufficiency of the evidence challenge to the civil damages award by failing to raise that issue in the trial court); *see also People in Interest of M.B.*, 2020 COA 13, ¶ 14 (noting that, except where jurisdiction is implicated, our review in civil cases is limited to the issues that the parties presented to and obtained a ruling from the trial court).

¶ 35    Because Boring and Carter failed to raise these arguments in the trial court, they are not preserved for appellate review. *See Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18 ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."). We thus decline to address them further.[5] *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011)

---

[5] Boring and Carter also argue that we should address their unpreserved argument about the derivative noneconomic damages because the jury "manifestly erred" by awarding Andy those damages without the court first "find[ing] justification by clear and convincing evidence therefor," as required under section 13-21-102.5(3)(b), C.R.S. 2024. We're not persuaded. "[O]nly in a 'rare' civil case, involving 'unusual or special' circumstances — and even then, only 'when necessary to avert unequivocal and manifest injustice' — will an appellate court reverse based on an unpreserved claim of error." *Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1269 (Colo. App. 2010) (citation omitted). Boring and Carter's reference to Andy's short testimony about one incident, when plaintiffs' emotional distress claims were based on a series of incidents occurring over a two-year period, doesn't meet this demanding standard. And to the extent Boring and Carter argue that we should review this issue because "the mandatory provision of [s]ection [13-21]-102.5(3)[b] should be considered self-executing," we note that they offer no authority or analysis in support of that sweeping proposition. Consequently, we decline to further consider this undeveloped argument. *See Cikraji v. Snowberger*, 2015 COA 66, ¶ 21 n.3 ("We do not consider bald factual or legal assertions presented without argument or development.").

("We review only the specific arguments a party pursued before the district court.").

¶ 36 Boring and Carter did mention the litigation stress argument in their motion for a judgment notwithstanding the verdict, stating that plaintiffs "themselves testified that they were not presently suffering from emotional distress from anything other than litigation stress, which is not compensable." It is questionable whether this bare bones reference with no supporting argument was sufficient to alert the trial court of the basis for the objection. Regardless, it fails.

¶ 37 In advancing this argument on appeal, Boring and Carter point us to the language of the damages instructions for the outrageous conduct and NIED claims. As relevant here, both instructions provided that in determining damages, the jury must consider "[a]ny noneconomic losses or injuries a plaintiff has had to the present time or that a plaintiff will probably have in the future, including . . . physical and mental pain and suffering, inconvenience, [and] *emotional stress* . . . ." (Emphasis added.)

¶ 38 Boring and Carter argue that because the jury was instructed that it could award damages for *emotional stress*, and "assuming

the jury followed the instructions, there is every reason to think that its award of noneconomic damages to Golec, Looney, and [Andy] and Laurie Soliday included an award for the stress caused by this litigation." In other words, Boring and Carter posit that the trial court erred by not instructing the jury that damages for emotional stress should exclude those damages for noncompensable litigation stress.

¶ 39 But the record shows that Boring and Carter also failed to raise this instructional challenge in the trial court. The parties jointly submitted the relevant damages instructions as part of the undisputed instructions packet before the first trial. The parties then stipulated to those identical instructions for the second trial that gave rise to this appeal. When the trial court went over the damages instructions during the jury instructions conference, Boring and Carter didn't object or request an instruction that would clarify the meaning of emotional stress.

¶ 40 C.R.C.P. 51 provides that "[a]ll instructions shall be submitted to the parties, who shall make all objections thereto before they are given to the jury. Only the grounds so specified shall be considered . . . on appeal or certiorari." Boring and Carter's failure to object to

the jury instructions they now challenge on appeal constitutes waiver. *See Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1200-01 (Colo. App. 2009) (declining to review an instructional challenge where the party failed to object to the instruction); *see also Farmland Mut. Ins. Cos. v. Chief Indus., Inc.*, 170 P.3d 832, 839 (Colo. App. 2007) (concluding that a party waived an issue that it raised in its motion for a judgment notwithstanding the verdict but failed to request a jury instruction on in the trial court).

¶ 41    Because this issue is waived, we likewise decline to address it further.

### E.    The Trial Court Didn't Err by Submitting to the Jury Boring and Carter's Counterclaim for Intrusion upon Seclusion

¶ 42    On cross-appeal, Wicks, Nicholson, Andy, and Drew contend that the trial court erred by denying their motion for a directed verdict on Boring and Carter's intrusion upon seclusion counterclaim.

¶ 43    In Colorado, invasion of privacy encompasses three separate torts: (1) unreasonable intrusion upon the seclusion or solitude of another; (2) unreasonable publicity given to another's private life; and (3) appropriation of another person's name or likeness.

24

*Pearson*, 70 P.3d at 598-99. Boring and Carter alleged the first tort for their counterclaim, asserting that plaintiffs unreasonably intruded upon their seclusion by taking photos and videos with surveillance cameras that plaintiffs surreptitiously installed in the neighborhood. To prevail, Boring and Carter had to show that plaintiffs "intentionally intruded, physically or otherwise, upon [their] seclusion or solitude, and that such intrusion would be considered offensive by a reasonable person." *Doe v. High-Tech Inst., Inc.*, 972 P.2d 1060, 1065 (Colo. App. 1998) (citing Restatement (Second) of Torts § 652B (Am. L. Inst. 1981)). A claim for intrusion upon seclusion contemplates an intrusion upon a physical space held in seclusion by the person asserting the claim, but it also "encompasses intrusions into a person's private concerns based upon a reasonable expectation of privacy in that area." *Id.* at 1068.

¶ 44    Plaintiffs moved for a directed verdict at the close of all evidence, arguing that Boring and Carter couldn't prevail on their counterclaim because they presented no evidence that the cameras intruded upon their privacy or that such intrusion would be viewed as offensive by a reasonable person. Specifically, plaintiffs

contended that Boring and Carter had no reasonable expectation of privacy given that the evidence established that the cameras weren't facing their property and that those cameras didn't record them inside their home. Rather, plaintiffs asserted, all photos and videos showed Boring and Carter while they were either out on the neighborhood road or in their backyard, which was visible from Looney's property. And in advancing their argument that Boring and Carter couldn't establish that the intrusion, if any, would be offensive to a reasonable person, plaintiffs pointed out that they installed the cameras for their security and to document Boring's and Carter's activities that they found objectionable.

¶ 45 The trial court denied plaintiffs' motion for a directed verdict. It determined that because some photos showed areas of Boring and Carter's property, "[t]he jury could certainly accept factually that . . . one camera [that] had the ability to take photos was pointed at [their property]." And in concluding that a reasonable juror could find that Boring and Carter had an expectation of privacy under the circumstances, the court distinguished this case from *Jacobson v. CBS Broadcasting, Inc.,* 19 N.E.3d 1165 (Ill. App. Ct. 2014), observing that

26

[the *Jacobson* case] indicates taking pictures in the backyard, there was no expectation of privacy because the backyard was visible from the sidewalk. This is not a case where anything would be visible from a sidewalk. This is not a sidewalk case. This is a rural area. It's a heavily tree[d] area. These properties are far apart from each other. The . . . court does find that . . . under this scenario, under this standard, there can be [an expectation] of privacy in a rural area with houses far away in your own yard.

¶ 46 Plaintiffs contend that the trial court erred when it reached this conclusion because "[a]s a matter of law, [Boring and Carter] do not have any expectation of privacy when they are on the road or when they are outside and can be viewed from [p]laintiffs' properties." In support, plaintiffs point out that the "undisputed evidence establishe[d]" that the cameras weren't pointed toward Boring and Carter's property and that there was no evidence "that any [p]laintiff ever went onto [Boring and Carter's] property or that [plaintiffs] ever looked into their residence." We're not persuaded for two reasons.

¶ 47 First, we disagree with plaintiffs' implication that the right to seclusion only exists *within* a person's home and doesn't extend to any area *outside* of it. While the interior of a home is a private

27

place, surveilling a person's backyard may also give rise to an invasion of privacy claim given that "there is a reasonable expectation of privacy within the *curtilage* of a residence." *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656-67 (Fla. Dist. Ct. App. 2021) (emphasis added).

¶ 48    Second, plaintiffs' argument mischaracterizes the record. As the trial court noted, there was a factual dispute as to whether the cameras were directed toward Boring and Carter's property. Boring and Carter testified that plaintiffs installed a camera high on a tree facing their backyard. Indeed, they both testified that they saw the recording light on the tree camera from inside their house, with Boring stating that he could "see a red dot from [their] bathroom." And while plaintiffs assert that the part of the property where Boring and Carter fired guns was "in plain sight from Looney's property," Carter testified that this area wasn't visible from the road that went through the neighborhood. Further, pictures of one of the security cameras shows that limbs are only cut away in one section. Carter testified that the camera was installed on the part of the tree "in between where the [branches were] cut out."

¶ 49    This record shows that Boring and Carter presented evidence from which reasonable jurors could dispute whether plaintiffs intruded upon their seclusion by installing surveillance cameras that were pointed to parts of the property where they had a reasonable expectation of privacy.  *See id.* at 655-57 (holding that a party intruded upon the seclusion of their neighbor by installing a surveillance camera roughly twenty-five feet in the air and pointing that camera toward the neighbor's backyard).  *Cf. Schiller v. Mitchell,* 828 N.E.2d 323, 326-29 (Ill. App. Ct. 2005) (dismissing a plaintiff's intrusion upon seclusion claim where a neighbor's surveillance camera was facing the parts of the plaintiff's property that were in a public view).

¶ 50    Plaintiffs contend that Boring and Carter nonetheless can't prevail on their counterclaim because they failed to establish that the intrusion was offensive to a reasonable person.  In support of this argument, plaintiffs assert that Boring and Carter "did not present any testimony that the photos/videos of them on the road or shooting were 'offensive.'"  But this argument misses the point. The governing test is not whether the intrusion *resulted* in one person acquiring information about another that a reasonable

29

person would view as offensive. Rather, the question is whether a reasonable person would find the intrusion itself offensive considering its degree, manner, and purpose. *See Doe*, 972 P.2d at 1069.

¶ 51     Here, the record shows that plaintiffs used cameras to monitor Boring and Carter's house for at least two years, making hundreds of videos. A reasonable juror could find this extended and persistent surveillance offensive. *See Jackman*, 334 So. 3d at 656-57 ("[W]e conclude that there is a material difference between occasionally viewing the activities within a neighbor's backyard that are observable without peering over a privacy fence and erecting a camera to see over a privacy fence to thereafter surveil and record those activities on a consistent basis."); *see also Polay v. McMahon*, 10 N.E.3d 1122, 1127-28 (Mass. 2014) (holding that the trial court erred by dismissing a claim for intrusion upon seclusion where a defendant was recording the plaintiff's home on a continuous basis).

¶ 52     True, the record also shows that plaintiffs installed the cameras to document Boring's and Carter's behavior after a police deputy suggested that they should take photos and videos of the

activities they perceived as harassment. But while plaintiffs argue that this means their surveillance wasn't for an unwarranted purpose, it was for the jury — and not the trial court — to decide that question of fact. *See Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 378 (Colo. 1997) (noting that whether a disclosure of a person's private life would be highly offensive to a reasonable person is a question of fact).

¶ 53 Finally, we also disagree with plaintiffs' conclusory assertion that Boring and Carter failed to present any evidence of damages. Boring testified that the surveillance caused him mental anguish, noting that he constantly felt like someone was "going to pop out and take a picture of [him and Carter]." He also testified that when he and Carter would go back to visit the neighborhood, they would feel like someone was keeping an eye on what they were doing and videotaping them. Similarly, Carter testified that she and Boring had to move out of the neighborhood "because of the feeling of being watched on your own property all the time." She stated that the knowledge that plaintiffs had been surveilling her made her feel anxious, "watched," and mentally drained. Boring and Carter thus presented competent evidence that they had suffered compensable

injuries.  *Doe*, 972 P.2d at 1066 (noting that a person who suffers an intrusion upon their seclusion is entitled to recover, among other things, damages for mental suffering).

¶ 54     In sum, we conclude that, viewing the evidence in the light most favorable to Boring and Carter, *see Woodard*, ¶ 8, there was sufficient evidence to create a factual dispute upon which reasonable jurors could have differed, *Boulders at Escalante LLC*, ¶ 19.  The trial court therefore didn't err by denying plaintiffs' motion for a directed verdict on that issue.

## F.     Appellate Attorney Fees

¶ 55     Plaintiffs request an award of attorney fees that they incurred in defending against this appeal.  Relying on section 13-17-102, C.R.S. 2024, plaintiffs contend that Boring and Carter's appeal lacked substantial justification because many of their arguments were not preserved in the trial court.

¶ 56     Section 13-17-102(2) provides that the court may award attorney fees against a party who "brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification."  An action "lacked substantial

32

justification" if it was "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(9)(a).

¶ 57 While we decline to address the merits of Boring and Carter's challenges to the NIED claim and damages awards, we don't conclude they brought this appeal in bad faith or presented no rational argument based on the evidence or law in its support. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 299-301 (Colo. App. 2009) (defining substantially frivolous, substantially groundless, and substantially vexatious claims). And they partially prevailed in this appeal in any case by successfully defending the portion of the judgment in their favor. We therefore deny the request for appellate attorney fees.

## III.   Disposition

¶ 58 The judgment is affirmed.

JUDGE YUN and JUDGE BERGER concur.